556 P.2d 39

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**Leo Dean McGILL, Defendant-Appellant.**

**No. 2548.**

Court of Appeals of New Mexico.

Oct. 19, 1976.

Jan A. Hartke, Acting Chief Public Defender, Reginald J. Storment, Appellate

**632**

Defender, Don Klein, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

Toney Anaya, Atty. Gen., Ray Hamilton, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

OPINION

WOOD, Chief Judge.

■ Defendant was convicted of five counts of armed robbery by use of a firearm. He appeals. His docketing statement listed numerous issues. Issues listed in the docketing statement which have not been argued are deemed abandoned. *State v. Vogenthaler*, 89 N.M. 150, 548 P.2d 112 (Ct.App.1976). The three issues argued concern: (1) severance of the several counts; (2) failure to present exculpatory evidence to the grand jury; and (3) reference to defendant's right to counsel.

*Severance*

Defendant was charged with six counts of armed robbery (the jury acquitted defendant of one of the charges). Defendant does not assert that the counts were improperly joined under Rule of Criminal Procedure 10. Prior to trial, defendant moved to sever "all Counts". The motion was based on Rule of Criminal Procedure 34(a) which authorizes the trial court to order separate trials "[i]f it appears that a defendant . . . may be prejudiced by a joinder of offenses".

Defendant's motion alleged that he *"may be prejudiced* through the introduction of evidence at a joint trial of offenses which fails to meet the other crimes test." The motion also alleged that he *"will be prejudiced,* by the sheer weight of the number of offenses charged, in a trial of this case." (Our emphasis.)

■ At the hearing on the motion, defendant stated that the motion did not require testimony "but oral argument alone". Oral argument on the "may be prejudiced" claim showed a difference of opinion between counsel as to whether evidence tending to show that defendant committed the various crimes would be admissible as to

each of the counts charged. This argument, unsupported by evidence, does not show the trial court erred in denying the motion on the "may be prejudiced" ground. *State v. Andrada*, 82 N.M. 543, 484 P.2d 763 (Ct.App.1971).

On appeal defendant relies on the trial evidence. The evidence relied on shows that evidence as to some of the counts would be admissible as to other counts under Evidence Rule 404(b). Recognizing this, defendant argues there should have been "at least a partial severance". Defendant did not make such a claim in the trial court; the trial court contention was for a severance of "all Counts". In addition, once the pretrial motion to sever was denied, the matter of severance was not again raised in the trial court. Defendant did "renew all prior motions" at the close of the evidence, but this did not inform the trial court that any question of severance was being raised.

Defendant's argument on the "will be prejudiced" claim is that the number of armed robbery charges prejudiced him as a matter of law. A similar contention was raised in *State v. Sero*, 82 N.M. 17, 474 P. 2d 503 (Ct.App.1970). The answer in *Sero* was that prejudice did not exist as a matter of law; rather consideration was given to three items: (1) severance was discretionary with the trial court; (2) the fact that evidence as to certain of the charges was admissible on other charges; and (3) the fact that the jury acquitted the defendant of some of the charges.

■ *Sero* is applicable in this case. Rule of Criminal Procedure 34(a) "leaves the decision to grant or deny a separate trial largely in the hands of the trial court." The appellate issue is whether the trial court abused its discretion in denying the motion to sever. *State v. Rondeau*, N. M., 553 P.2d 688 (1976). Defendant's appellate argument concedes that certain evidence was admissible on more than one count. Defendant was acquitted of one of the charges.

The trial court did not err in denying the motion to sever.

*Exculpatory Evidence to The Grand Jury*

Defendant claims that the grand jury indictment was void because the State failed to present exculpatory evidence to the grand jury. The claim is based on § 41–5–11(B), N.M.S.A.1953 (2d Repl. Vol. 6), and an interpretation of a similar statute by the Supreme Court of California in *Johnson v. Superior Court of San Joaquin County*, 15 Cal.3d 248, 124 Cal.Rptr. 32, 539 P.2d 792 (1975). An alternative contention is that the prosecutor's failure to present exculpatory evidence deprived defendant of due process of law. This contention is based on the California Court of Appeals decision in the *Johnson* case. See 38 Cal.App.3d 976, 113 Cal.Rptr. 740 (Ct. App.1974).

Defendant recognizes that the trial court lacks authority to review the evidence considered by the grand jury. *State v. Ergenbright*, 84 N.M. 662, 506 P.2d 1209 (1973). He does not challenge the sufficiency of that evidence to support the indictment; he does not assert that the grand jury was exposed to any taint. See *State v. Elam*, 86 N.M. 595, 526 P.2d 189 (Ct.App.1974). Defendant's claim is that the indictment is void because with exculpatory evidence withheld, the grand jury was never given the opportunity to exercise its independent judgment as to whether defendant should be indicted.

We disagree with defendant's contention based on § 41–5–11(B), supra, and decline to follow the California Supreme Court decision on which defendant relies. The grand jury acts to determine whether, from the evidence presented to it, there was probable cause that the defendant ought to be placed on trial. *State v. Salazar*, 81 N.M. 512, 469 P.2d 157 (Ct.App. 1970). *State v. Chance*, 29 N.M. 34, 221 P. 183, 31 A.L.R. 1466 (1923) states that:

"[U]nless there is some clear statutory authority to do so, we think the courts are without power to review its action to determine whether or not it had sufficient or insufficient, legal or illegal, competent or incompetent evidence upon which to return an indictment. . . . We think the statutes referred to, governing the kind, character, and degree of evidence which should be produced before a grand jury in order to warrant the returning of an indictment, are directory and are for the guidance of the grand jury. To be sure, they should be followed, and members of the grand jury, as well as district attorneys, should endeavor to comply with their provisions, but we think the findings of such grand jury, when made by and through an indictment, duly returned into court, and regular upon its face, are, with respect to the kind and degree of evidence upon which it was returned, conclusive, and that the courts are without power or jurisdiction to inquire into the subject and review the testimony submitted to the grand jury to determine whether or not the required kind or degree of evidence was submitted."

Because of the language used in *State v. Chance*, supra, we decline to hold that § 41–5–11(B), supra, and § 41–5–7, N.M.S.A. 1953 (2d Repl. Vol. 6) to which defendant also refers, should be interpreted to provide a review as to whether exculpatory evidence was withheld.

Concerning the due process claim, we assume that a defendant could be denied due process by a prosecutor withholding exculpatory evidence from the jury. We make this assumption for two reasons: (1) the grand jury has a duty to protect a citizen against unfounded accusation, see the California Court of Appeals *Johnson* decision, supra, and cases cited therein; and (2) only specified persons are authorized by statute to present matters to the grand jury. *State v. Hill*, 88 N.M. 216, 539 P.2d 236 (Ct.App.1975). On the basis of this assumption, we consider whether defendant was denied due process on the basis of the withholding of allegedly exculpatory evidence.

Defendant relies on two items. 1. In two of the robberies fingerprints were found, processed and found not to match defendant's fingerprints. This evidence was not presented to the grand jury. The prosecutor testified that at the time he presented the case to the grand jury that he was not aware of fingerprints being found at one of the robberies and could not remember when he learned of fingerprints found at the other robbery. He testified that he had not talked to investigators prior to the grand jury presentation because of lack of time. In connection with the two robberies where fingerprints were found (not of defendant) there was positive identification that defendant was the robber. 2. A victim of still another robbery failed to identify defendant at a lineup; rather she identified another person. The victim's testimony before the grand jury was that she "wasn't sure by the faces but I was sure by the voice." A detective testified before the grand jury that identification had been made in the lineup. The showing is of a conflict, but not of withheld evidence.

█ Neither of the items relied on amount to a showing that defendant was deprived of fundamental fairness on the basis of evidence withheld from the grand jury. There was no denial of due process.

*Reference to Defendant's Right to Counsel*

On direct examination, a detective was asked about "the lineup procedure." The prosecutor asked and the detective testified that a lawyer is present when a lineup is held. The detective was asked whether lawyers were present when the lineup was held in this case. The answer was that two public defenders and one assistant district attorney were present. The prosecutor was asked the reason for bringing in defense lawyers. The answer: "Under the rights of the defendant, they have the right to be represented by legal counsel at a police lineup, and we afford them that opportunity."

Defendant moved for a mistrial contending it was error to refer to defendant's constitutional right to an attorney. The prosecutor stated that "the only reason I am getting into that is because there have been implications or inferences there was not a fair lineup." The motion was overruled. Subsequent questioning of the detective by the prosecutor did in fact go to the fairness of the lineup procedure.

Defendant contends that a mistrial should have been granted because the reference to counsel at a lineup had no significant probative value and the reference was prejudicial to defendant.

How did a trial reference to the constitutional right to counsel prejudice the defendant? Defendant finds such prejudice by the fact that the right was *mentioned* at trial. He would equate a reference to the right of counsel with a reference to defendant's silence. See *State v. Lara*, 88 N.M. 233, 539 P.2d 623 (Ct.App. 1975) as limited in *State v. Baca*, 89 N.M. 204, 549 P.2d 282 (1976). See also, *Doyle v. Ohio*, —— U.S.——, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). Paraphrasing *State v. Lara*, supra, defendant seeks a holding that if the exercise of defendant's right to counsel lacks significant probative value, any reference to the exercise of the right has an intolerable prejudicial impact requiring reversal. We disagree.

*United States ex rel. Macon v. Yeager*, 476 F.2d 613 (3rd Cir.1973) states:

"[T]he relevant question is whether the particular *defendant* has been *harmed* by the state's use of the fact that he engaged in constitutionally protected conduct, not whether, for the particular defendant or for persons generally, the state's reference to such activity has or will *burden* the exercise of the constitutional *right*."

In *Yeager*, defendant was harmed because the prosecutor argued an inference of guilt to the jury on the basis that defendant had telephoned his lawyer. In *Mays v. State*,

495 S.W.2d 833 (Tenn.Cr.App.1972) the defendant was harmed by the officer testifying that the defendant terminated the interrogation to consult his attorney.

 In this case, the State's use of the fact that defendant engaged in constitutionally protected conduct went only to the fairness of the lineup procedure. In that context, defendant was not harmed by testimony that defendant had a right to counsel.

The judgment and sentences are affirmed.

IT IS SO ORDERED.

HENDLEY and SUTIN, JJ., concur.