**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**Raymond Earl TRASS, James Hobby,
III, Defendants-Appellees.**

No. 78–3381.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 11, 1979.

Decided May 4, 1981.

Juan Robertson, Los Angeles, Cal., argued for plaintiff-appellant; Michael C. Denison, Asst. U. S. Atty., Los Angeles, Cal., on brief.

Paul L. Gabbert, Los Angeles, Cal., Jerry L. Newton, Beverly Hills, Cal., argued for defendants-appellees; Jerry L. Newton, Beverly Hills, Cal., Victor Sherman, Los Angeles, Cal., on brief.

Before  BROWNING,  Chief Judge, GOODWIN, Circuit Judge, and EAST,* District Judge.

BROWNING, Chief Judge:

The District Court dismissed an indictment because of the manner in which the government presented its case to the grand jury. The government resubmitted evidence and a second indictment was returned. The court again dismissed. The government appeals.

Appellees are real estate brokers. The indictments alleged they caused false statements to be made in documents submitted to the Federal Housing Administration to induce FHA to insure loans to persons to whom appellees were selling homes. The false statements related to the financial condition of the home buyers (their assets and liabilities, whether they were employed, the length of their employment, the amount of their earnings), and, in some instances, to the buyers' intention to personally occupy the house being purchased.

The government's theory is that appellees either participated with the buyers in including the false information in the documents submitted to FHA or, in some cases, themselves included the false information in the documents, sometimes after obtaining the buyer's signature on a blank form. Appellees' theory is that, to the extent the information furnished was false, it was solely the buyers themselves, not appellees, who furnished the information and who alone were aware of its falsity.

Appellees were arrested on a complaint charging violations of 18 U.S.C. §§ 1010 and 2(b). Appellees' counsel wrote to the United States Attorney asking that in the event the matter was presented to a grand jury: (1) the grand jury proceedings be transcribed; (2) the grand jury hear only testimony from the percipient witnesses (the buyers), rather than hearsay; (3) the government bring exculpatory evidence to the attention of the grand jury; and (4) the

grand jury be told that appellees wished to present evidence on their own behalf.

The grand jury met and returned the initial indictment. The proceedings were transcribed and appellees were given an opportunity to present evidence on their own behalf, though they did not do so.

Appellees moved to dismiss the indictment on the ground the government failed to satisfy appellees' two remaining requests: (1) the government did not call the percipient witnesses (buyers), but instead presented its case through the hearsay testimony of the investigating agent as to what the buyers had said when interviewed; and (2) the government did not present certain evidence adverse to the credibility of the buyers, such as that the buyers were potentially criminally liable for subscribing to documents containing false statements and had been told they would not be prosecuted if they would testify against appellees, and that some of the buyers had prior criminal records.

The court granted the motion to dismiss, stating its reasons as follows:

Defendants have asked this court to dismiss the indictment returned on March 22, 1978, charging them with fourteen counts of violating 18 U.S.C. §§ 2 and 1010. They base their motion on the Government's failure to comply with certain requests that defendants made on March 7, 1978, concerning the presentation of evidence to the grand jury. Defendants requested the Government to call only 'percipient' witnesses, to use no hearsay testimony, to record and transcribe the grand jury proceedings, to advise the grand jury that defendants desire to present evidence, and to bring to the attention of the grand jury certain *Brady* material concerning the credibility of certain prospective grand jury witnesses. The Government recorded and transcribed the proceedings and made some mention of defendants' desire to present evidence, but otherwise failed to comply

* Honorable William G. East, Senior Judge, United States District Court for the District of Oregon, sitting by designation.

with defendants' requests. None of the requested *Brady* material was presented to the grand jury, the only witness called before the grand jury was the investigating FBI agent, and hearsay evidence was used exclusively. Defendants now urge that the Government's procedures were an abuse of the grand jury process and are grounds for dismissal of the indictment. The Government counters by arguing that it was required to comply only with defendants' request for recordation and transcription of the grand jury proceedings.

The Court agrees with the Government's position that under current Ninth Circuit law hearsay testimony alone is sufficient to support an indictment. *United States v. Costello*, 350 U.S. 359, 363 [76 S.Ct. 406, 408, 100 L.Ed. 397] (1956); *United States v. Short*, 493 F.2d 1170, 1173 (9th Cir.) *cert. denied*, 419 U.S. 1000 [95 S.Ct. 317, 42 L.Ed.2d 275] (1974). The Court also agrees that under current Ninth Circuit law the Government need not produce percipient witnesses to testify before the grand jury. *United States v. Short*, 493 F.2d at 1173. The Court believes, however, that the grand jury system is compromised when, as was done here, the Government presents a case on the basis of hearsay, but fails to inform explicitly the grand jurors that they are receiving exclusively second-hand information, i. e., hearsay evidence. Moreover, at a minimum the Government should inform the grand jurors that, upon their request, any person who provided information to Government investigators will be brought before the grand jury to answer questions. This, too, the Government failed to do. The Government also failed to heed the defendants' request that evidence bearing on the credibility of the alleged victims be presented to the grand jury. Although *Brady* material need not be routinely disclosed in grand jury proceedings, *Loraine v. United States*, 396 F.2d 335, 339 (9th Cir.), *cert. denied*, 393 U.S. 933 [89 S.Ct. 292, 21 L.Ed.2d 270] (1968), it is clear that some disclosure may be required under certain circumstances. See *United States v. De Marco*, 401 F.Supp. 505 (C.D.Cal.1975). See also ABA Standards Relating to the Prosecution Function and The Defense Function, Investigation for Prosecution Decision, § 3.6(b). In the instant case, the credibility of the alleged victims is crucial. Furthermore, the defendants made a timely request to have these alleged victims, all residents of the Los Angeles area, testify before the grand jury. As a matter of basic fairness, available *Brady* material relating to credibility of the alleged victims should have been disclosed to the grand jury.

As an independent body the grand jury deserves respect. It should not be used as a rubber stamp. The Government's method of presenting this case to the grand jurors compromised the integrity of the grand jury system. The Court therefore finds that dismissal, without prejudice, of the indictment brought against defendants is required.

THEREFORE, IT IS ORDERED that this case be dismissed without prejudice. . . .

The government filed a notice of appeal but withdrew it. Appellees' counsel then wrote to the United States Attorney requesting that if the case were resubmitted to the grand jury the following action be taken: (1) if an indictment were returned it be treated as a superseding rather than a new indictment; (2) the case be presented to the same grand jury; (3) the grand jury be advised of the reasons for resubmission; (4) the proceedings be recorded; (5) the buyers themselves be called; (6) certain information bearing upon the credibility of these potential witnesses be presented to the grand jury, namely, they were themselves subject to prosecution and were promised they would not be prosecuted, some had prior records, some of their family members had forged documents, employees of the lender had stated that the appellees had done nothing wrong, and some of the allegedly false information in the forms submitted had been verified by the lender through independent credit checks. Coun-

sel also indicated that appellees wished to appear before the grand jury if the buyers were called.

The United States Attorney responded, explaining why the new indictment, rather than a superseding indictment, was technically required, agreeing that the matter would be presented to the same grand jury, agreeing that the proceedings would be recorded, and inviting appellees themselves to present evidence. However, appellees were advised the case would be presented as before through the testimony of the investigating agent rather than the testimony of the buyers. The United States Attorney stated, however, that he would explain the nature of hearsay evidence to the grand jury, and the grand jury would be told that the buyers would be called if the grand jury wished to hear them.

In opening the second grand jury inquiry, the United States Attorney fully informed the grand jury of the reasons for the dismissal of the first indictment. The order of the trial judge was read in full, and the grand jury was advised of the government's intention to abide by it. The nature of hearsay evidence was explained to the grand jury. The grand jury was told the agent would testify as to statements the buyers made to the agent with respect to their relationship with the appellees. It was pointed out to the grand jury that the agent had no personal knowledge of these facts, and would not be permitted to testify to them at trial, but that the buyers themselves would have to be called as witnesses. The grand jury was told that if after hearing the testimony of the agent they wished to hear the testimony of the buyers themselves, or any of them, they would be produced before the grand jury.

The grand jury was told the buyers themselves may have violated the law and had been so advised by the agent. No promises had been made, but the buyers had been told that prosecution of the brokers had higher priority and that prosecution of the buyers would normally be declined in hopes of using them as witnesses at trial. The agent told the buyers the United States

Attorney would make the final decision with regard to prosecution. The United States Attorney told the grand jury he had made no promises to the buyers. He stated he would probably decline prosecution and if any of the buyers had asked him he would probably have so advised them, but that none had asked. The prior arrest records of the buyers were presented to the grand jury, and the significance of this information to the credibility of the buyers was explained.

At the conclusion of the presentation of the government's evidence the United States Attorney again advised the jury that while the government had chosen to present only the hearsay testimony of the agent, the grand jury had the right to hear the purchasers themselves if it wished, and that the appellees had requested that the grand jury do so. The United States Attorney then left the grand jury room. Upon his return, the grand jury informed him that it did not need to hear further witnesses. After deliberating, the grand jury returned the indictment now before us. Appellees moved to dismiss. The court granted the motion, stating as follows:

I will tell you, Mr. Denison [the Assistant United States Attorney], I am not faulting you because I have read the grand jury transcript. I would say from the point of view of the U.S. Attorney's office, the transcript gives every indication to me that you bent over backwards to make a fair presentation. I think you were quite careful in following the letter of my prior order.

I also think that there were some areas of deficiency. First, the forms were not there. Secondly, there was no clear evidence presented to the grand jury on the paper flow, the procedure, the paper flow procedure on processing the applications. I think, too, that because this was a second go-around that the percipient witnesses should have been there. The grand jury should have been given the option to hear them or not hear them, knowing that they were then available and not having the grand jurors being

presented with the option of waiting two weeks for these witnesses to make their appearance.

Then I think there should have been a fuller, more complete statement of the arrangement that the government had with the percipient witnesses. I also think it probably would have been better, as this was the second go-around, if this grand jury was not placed under any time constraints which, of course, is an inference that you can draw when you read the transcript.

So, I think just in the spirit of fairness to the accused, the government ought to take the matter back to the grand jury and handle it as I have suggested. I am going to grant the motion to dismiss the indictment again, and I expect you to go there and present it to them. We will go through it again.

Since the government did not appeal from the order dismissing the first indictment, the only question before us is whether the government's presentation to the grand jury that resulted in the second indictment justified dismissal of that indictment. We have no doubt that it did not.

It is of great importance that the integrity of the grand jury process be scrupulously maintained. "In this country the Founders thought the grand jury so essential to basic liberties that they provided in the Fifth Amendment that federal prosecution for serious crimes can only be instituted by 'a presentment or indictment of a Grand Jury.'" *U. S. v. Calandra*, 414 U.S. 338, 343, 94 S.Ct. 613, 617, 38 L.Ed.2d 561 (1974). The grand jury "has been regarded as a primary security to the innocent against hasty, malicious and oppressive persecution; it serves the invaluable function in our society of standing between the accuser and the accused." *Wood v. Georgia*, 370 U.S. 375, 390, 82 S.Ct. 1364, 1373, 8 L.Ed.2d 569 (1962).

Although sensitive to this vital interest, the courts have generally resisted suggestions that they scrutinize grand jury proceedings closely and intervene to enforce high standards of prosecutorial conduct affording maximum protection to the accused.

This restraint rests upon a variety of factors: functional, historic, conceptual, and practical. It is the function of the grand jury to ferret out and charge wrongdoers, as well as to protect the individual.[1] Historically, the grand jury has been afforded wide latitude to perform its functions free of rigid rules and restrictions.[2] Conceptually, while the grand jury is independent of both the judiciary and the executive, "both court and prosecutor play supportive and complementary roles." *United States v. Chanen*, 549 F.2d 1306, 1312 (9th Cir. 1977). Courts will not encroach upon the manner in which the prosecutor presents the government's case to the grand jury "unless there is a clear basis in fact and law for doing so," for any other rule "could readily prove subversive of the doctrine of separation of powers." *Id.* at 1313. Practically, it is strongly and repeatedly asserted that permitting the accused to challenge the indictment on the basis of imperfections in the manner in which the case was presented to the grand jury would result in delay and frustration of the criminal process. The unwillingness of courts to encourage a procedure involving such high cost is strengthened by the perception that the innocent will in any event have an adequate opportunity to test the government's evidence in a fair trial of the charge, which must precede any conviction. The most frequently quoted statement of these practical considerations is found in *Costello v. United States*, 350 U.S. 359, 363–64, 76 S.Ct. 406, 408–409, 100 L.Ed. 397 (1956):

If indictments were to be held open to challenge on the ground that there was inadequate or incompetent evidence be-

1. *Branzburg v. Hayes*, 408 U.S. 665, 683, 686–87, 92 S.Ct. 2646, 2657, 2659–2660, 33 L.Ed.2d 626 (1972).

2. *United States v. Calandra*, 414 U.S. 338, 343–49, 94 S.Ct. 613, 617–620, 38 L.Ed.2d 561

(1974); *Branzburg v. Hayes*, 408 U.S. 683, 688, 92 S.Ct. 2657, 2660 (1972); *Costello v. United States*, 350 U.S. 359, 362, 76 S.Ct. 406, 408, 100 L.Ed. 397 (1956).

fore the grand jury, the resulting delay would be great indeed. The result of such a rule would be that before trial on the merits a defendant could always insist on a kind of preliminary trial to determine the competency and adequacy of the evidence before the grand jury. This is not required by the Fifth Amendment. An indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charges on the merits. The Fifth Amendment requires nothing more.

Petitioner urges that this Court should exercise its power to supervise the administration of justice in federal courts and establish a rule permitting defendants to challenge indictments on the ground that they are not supported by adequate or competent evidence. No persuasive reasons are advanced for establishing such a rule. It would run counter to the whole history of the grand jury institution, in which laymen conduct their inquiries unfettered by technical rules. Neither justice nor the concept of a fair trial requires such a change. In a trial on the merits, defendants are entitled to a strict observance of all the rules designed to bring about a fair verdict. Defendants are not entitled, however, to a rule which would result in interminable delay but add nothing to the assurance of a fair trial.[3]

Faithful to these admonitions we have held that "[d]ismissal of an indictment is required only in flagrant cases in which the grand jury has been overreached or deceived in some significant way." *United States v. Thompson*, 576 F.2d 784, 786 (9th

Cir. 1978). *See also United States v. Kennedy*, 564 F.2d 1329, 1338 (9th Cir. 1977). The conduct of the prosecutor which the district court considered in dismissing the second indictment in this case is not of that character.

■ The district judge identified three problems. The first was that the grand jury did not see the forms in which the fraudulent statements were made and heard "no clear evidence" on the manner in which these forms were processed. The record shows, however, that the forms were available to the grand jury had it desired to examine them, and that the method of processing the forms was explained to the grand jury by the investigating agent. The manner in which the evidence was presented fell well within the broad range of prosecutor's discretion.

■ The district court thought the government should have had the buyers immediately at hand so the exercise by the grand jury of its right to call them would not have been burdened by the possibility of delay. As the court recognized, reliance on hearsay, even exclusively, does not justify dismissal of an indictment.[4] With this in mind, the court's objection reflects far too fine a supervision of details of the grand jury proceeding.

■ Finally, the district judge felt the government should have made a more complete statement to the grand jury regarding the prosecutor's agreement with the potential buyer-witnesses. As we have noted, both the investigating agent and the Assistant United States Attorney provided the grand jury with information on this subject. The trial court's criticism is only that the statement was not sufficiently full. How-

3. *See also United States v. Calandra*, 414 U.S. 338, 349–350, 94 S.Ct. 613, 619–620, 38 L.Ed.2d 561 (1975); *United States v. Kennedy*, 564 F.2d 1329, 1337–38 (9th Cir. 1977); *United States v. Chanen*, 549 F.2d 1306, 1312–13 (9th Cir. 1977); *United States v. Y. Hata & Co., Ltd.*, 535 F.2d 508, 512 (9th Cir. 1976); *Loraine v. West*, 396 F.2d 335, 339 (9th Cir. 1968); *United States v. Ciambrone*, 601 F.2d 616, 622 (2d Cir. 1979).

4. *Costello v. United States*, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956); *United States v. Seifert*, 648 F.2d 557, at 564 (9th Cir. 1980); *United States v. Short*, 493 F.2d 1170, 1172–73 (9th Cir. 1974); *United States v. Trenary*, 473 F.2d 680, 682 (9th Cir. 1973); *Jack v. United States*, 409 F.2d 522 (9th Cir. 1969); *Wood v. United States*, 405 F.2d 423, 424–25 (9th Cir. 1968); *Johnson v. United States*, 404 F.2d 1069, 1070 (9th Cir. 1968); *United States v. Leibowitz*, 420 F.2d 39, 42 (2d Cir. 1969).

ever, an indictment will not be dismissed simply because the prosecutor does not present the grand jury all available exculpatory information, or all material bearing upon the credibility of potential witnesses.[5]

As we have said, under controlling precedent the threshold that must be surmounted before judicial intervention in the grand jury process can be justified has been set at a high level, for a variety of reasons having no necessary relationship to the standards that should guide a prosecutor presenting matters to a grand jury. It is not the function of the federal courts acting in their adjudicative capacity to develop and enforce a code of professional conduct for prosecutors. Court decisions disapproving dismissal of indictments for prosecutorial misconduct therefore do not afford a sound guide to appropriate conduct by the prosecutor before the grand jury; the Department of Justice and professional organizations should and do impose standards far stricter than those administered by the courts. *See, e. g.,* 1 American Bar Association, *Standards for Criminal Justice,* Standard 3–3.5, 3–3.6 (2d ed. 1980); *United States Attorneys Manual* § 9–11.334 (1980).

The conduct of the prosecutor in presenting this case to the second grand jury did not approach the level of prosecutorial misconduct necessary to make out a violation of the due process clause or to justify an exercise of the supervisory power of the court.

REVERSED.

---

5. *United States v. Seifert,* 648 F.2d 557, at 564 (9th Cir. 1980); *United States v. Samango,* 607 F.2d 877, 882 (9th Cir. 1979); *United States v. Thompson,* 576 F.2d 784, 786 (9th Cir. 1978); *United States v. Kennedy,* 564 F.2d 1329, 1337–38 (9th Cir. 1977); *United States v. Y. Hata & Co., Ltd.,* 535 F.2d 508, 512 (9th Cir. 1976); *Jack v. United States,* 409 F.2d 522, 524 (9th Cir. 1969); *Loraine v. United States,* 396 F.2d 335, 339 (9th Cir. 1968). *But cf.* 1 American Bar Association, *Standards for Criminal Justice,* Standard 3–3.6(b) (2d ed. 1980) (requiring prosecutor to disclose "evidence which will tend substantially to negate guilt").