654 P.2d 562
**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**Johnny VELASQUEZ,
Defendant-Appellant.**

No. 5506.

Court of Appeals of New Mexico.

Oct. 12, 1982.

Certiorari Denied Dec. 1, 1982.

See also 655 P.2d 160.

Ralph Montez, Santa Fe, for defendant-appellant.

Jeff Bingaman, Atty. Gen., Eddie Michael Gallegos, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

NEAL, Judge.

Defendant, convicted of voluntary manslaughter, raises four issues in this appeal.

1. Whether the trial court erred when it refused to dismiss the indictment based upon the ineligibility of a grand juror.

2. Whether the indictment should have been dismissed because of prosecutorial misconduct.

3. Whether the trial court erred in giving an unrequested self-defense instruction.

4. Whether the trial court erred in failing to direct a verdict of not guilty based upon insufficiency of the evidence.

We affirm.

Differing versions of the killing were presented at trial. The defendant testified that he had gone to a bar in Gallina, New Mexico, to play pool. When he arrived at the parking lot of the bar he got out of his pickup and started for the entrance to the bar. Before he reached the entrance someone called to him. He turned around and saw a bottle flying toward him and ducked. Defendant then saw Johnny Chacon, the victim, running toward him. The defendant thought he saw something metal, possibly a knife, in Chacon's hand. Afraid that he was about to be killed or badly injured, defendant reached in his pocket, opened a knife, and slashed at Chacon when Chacon was about two or three feet from him. The knife wound killed Chacon.

Defendant testified that he did not intend to kill Chacon and was acting in self-defense. Bad blood had existed between the victim and the defendant and their respective families for some time.

Theresa Chavez, the victim's "common-law" mother-in-law, and Joe Gallegos were eyewitnesses to the killing. Their version was that defendant, without provocation, stabbed the victim.

Defendant raised twelve issues in his docketing statement. The issues not briefed have been abandoned. *State v. McGill*, 89 N.M. 631, 556 P.2d 39 (Ct.App. 1976).

1. *Ineligible grand juror.*

The grand jury convened in Rio Arriba County. Defendant claims that a member of the grand jury was ineligible because the grand juror was not a resident of Rio Arriba County. N.M. Const., art. II, § 14.

Section 31–6–3, N.M.S.A.1978, provides:

Any person held to answer for an offense by grand jury indictment, *upon arraignment* to the charge therein, by motion to quash the indictment stating with particularity the ground therefor, may challenge the validity of the grand jury. *A failure to file such motion is a waiver of the challenge.* Grounds that may be presented by such motion are limited to the following:

\* \* \* \* \* \*

B. a member of the grand jury returning the indictment was ineligible to serve as a juror \* \* \*

The trial court properly denied defendant's motion to quash the indictment because the defendant did not comply with § 31–6–3, *supra.* Under this statute the defendant upon *arraignment* must file the

motion to quash the indictment. Defendant waited until *after trial* to file his motion and waived his right to challenge the validity of the grand jury based upon an ineligible grand juror. See *Territory v. Romero,* 2 N.M. (Gild.) 474 (1883). Defendant asserts his motion to dismiss was a challenge to the jurisdiction of the court; from the cases cited in support of this argument, defendant uses "jurisdiction" in the sense of a sufficient charge for there to be a pending cause. *See State v. Mabrey,* 88 N.M. 227, 539 P.2d 617 (Ct.App.1975). The indictment charged an offense in accordance with R.Crim.Proc. 5. The charge was not deficient. The attack on the eligibility of one grand juror did not raise an issue as to the jurisdiction of the court, it went only to procedural requirements for returning an indictment. The asserted violation of the procedural requirement was not timely raised. Section 31–6–3, *supra.*

2. *Prosecutorial misconduct and failure to record Spanish questions and answers.*

This claim involves two parts: (A) failure of the prosecutor to provide Theresa Chavez with an interpreter and asking her leading questions and (B) failure of the court reporter to record Spanish questions and answers.

Defendant had been previously indicted. That indictment was dismissed because the District Attorney failed to present exculpatory evidence. Theresa Chavez had an interpreter before the first grand jury.

When she appeared before the second grand jury Chavez was not provided with an interpreter. The transcript of Chavez' grand jury testimony shows that her recorded responses consisted of "Yeah", "No", "Si", or answers which indicate that she may have had some difficulty understanding the questions propounded to her. Each question asked by the District Attorney was leading. Several responses were in Spanish. The grand jurors were allowed to ask questions in Spanish. None of the Spanish questions and answers were recorded by the court reporter.

A. Prosecutorial misconduct.

Based upon the failure of the prosecutor to provide Chavez with an interpreter and asking her leading questions defendant filed two motions to dismiss the indictment, alleging a violation of § 31–6–7, N.M.S.A. 1978 (1982 Cum.Supp.). Section 31–6–7 provides that the district attorney "shall conduct himself in a fair and impartial manner at all times when assisting the grand jury."

Defendant also moved to dismiss the indictment because the Spanish questions and answers were not transcribed.

After an evidentiary hearing the trial court denied all of the motions to dismiss the indictment. Defendant argues that the prosecutor's failure to procure an interpreter for Chavez was a deliberate attempt to shortcut the grand jury process, *State v. Sanchez,* 95 N.M. 27, 618 P.2d 371 (Ct.App. 1980). He also contends that the failure to record Chavez' testimony in its entirety deprived defendant of due process and of his right to confrontation since defendant was unable to use the transcript during cross-examination of Chavez at trial.

At the motion hearing the prosecutor stipulated to the fact that Chavez was not fluent in English. The court felt that her testimony *per se* did not indicate that Chavez did not understand the questions being asked of her. The court reporter testified that she was unable to take down the testimony in Spanish, and she thought that Chavez was having difficulty in answering the questions. She further said that she recalled the prosecutor leaving the grand jury room several times in an attempt to find an interpreter for Chavez. Defendant's counsel acknowledged that the prosecutor tried to provide an interpreter in the second presentment.

The trial court stated that it found no willful failure to find an interpreter for Chavez, and that even without her testimony there was enough evidence to support a finding of probable cause. The trial court also stated that there was substantial com-

pliance with the reporting requirement, § 31–6–8, N.M.S.A.1978 (Cum.Supp.1982). The trial court found that in view of all the other testimony before the grand jury, defendant was not prejudiced in any way.

How much prejudice is required before an indictment must be dismissed? Case law indicates that a prosecutor's conduct during presentment of the case has not yet been subjected to the same analysis as have violations of other grand jury statutes.

■ A defendant need not show prejudice where an unauthorized person is present during the proceedings, *State v. Hill,* 88 N.M. 216, 539 P.2d 236 (Ct.App. 1975), or where the district attorney is present during grand jury deliberations, *Baird v. State,* 90 N.M. 667, 568 P.2d 193 (1977).

■ When prosecutorial misconduct during presentment of the case is claimed, as in the present case, the defendant has a difficult burden to show prejudice. In *Buzbee v. Donnelly,* 96 N.M. 692, 634 P.2d 1244 (1981) our Supreme Court held that when prosecutorial misconduct in presenting the case to the grand jury is alleged, the indictment will not be dismissed absent a showing that the conduct complained of infringed upon the independent judgment of the grand jurors and changed the result. In short, demonstrable prejudice must be shown.

The *Buzbee* rule is consistent with the rule posited in many Federal cases. In general, only flagrant cases of deliberate prosecutorial misconduct resulting in demonstrable prejudice have resulted in dismissal of indictments. For the most part, the defendants have not been able to demonstrate such prejudice. See, e.g., *United States v. Merlino,* 595 F.2d 1016 (5th Cir. 1979); *In Re Perlin,* 589 F.2d 260 (7th Cir. 1978), *United States v. Birdman,* 602 F.2d 547 (3d Cir.1979); *United States v. Trass,* 644 F.2d 791 (9th Cir.1981); *United States v. Polizzi,* 500 F.2d 856 (9th Cir.1974).

In *United States v. Cederquist,* 641 F.2d 1347 (9th Cir.1981), the court held that dismissal is required only where the grand jury has been over-reached or deceived in some significant way—the prosecutorial misconduct must significantly infringe on the ability of the grand jury to exercise its independent judgment. In that case there was no dismissal where the prosecutor conveyed his impression as to guilt or innocence, submitted the proposed indictment prior to the close of the testimony, and frequently used the expression "check-kiting".

*United States v. Roberts,* 481 F.Supp. 1385 (C.D.Cal.1980) is an example of prosecutorial misconduct requiring dismissal of an indictment. In that case the court found that the cumulative effect of comments designed to discredit and slant certain testimony, an erroneous statement about polygraphs, and a failure to keep a promise made to the trial judge that *all* exculpatory evidence would be produced amounted to prejudice.

■ Under the circumstances of this case we cannot say that dismissal of the indictment is warranted. Defendant has not shown sufficient prejudice under *Buzbee, supra.*

There is no evidence that the prosecutor willfully failed to provide an interpreter. Leading questions were used but were not prejudicial. Defendant relies on *Sanchez, supra,* for the proposition that leading questions are improper. *Sanchez* does contain dicta which states that leading questions violate § 31–6–7, *supra,* but in that case the indictment was dismissed because of withheld exculpatory evidence. In the present case there is no claim that exculpatory evidence was withheld, and the leading questions here do not require dismissal of the indictment.

**B. Failure to record Spanish questions and answers.**

■ The grand jurors asked Chavez several questions in Spanish, and several of Chavez' answers were in Spanish. The court reporter did not transcribe the Spanish questions and answers because she did not speak Spanish. Defendant contends

that § 31–6–8, *supra,* was violated and the indictment should have been dismissed. We disagree.

Under § 31–6–8, *supra,* all proceedings in the grand jury room, with the exception of the deliberations of the grand jury, shall be recorded verbatim.

The recording requirement serves a number of purposes. The defendant has an opportunity to impeach the witness at trial if there is any inconsistency between grand jury testimony and trial testimony. Prosecutorial abuses of the grand jury system are restrained, and the prosecution can support its case at trial. *See* 8 Moore's Federal Practice, ¶ 6.01[7], ¶ 6.01[2] (2d ed.1981).

*State v. Pedroncelli,* 97 N.M. 190, 637 P.2d 1245 (Ct.App.1981) is very similar to the present case. In *Pedroncelli* a tape recorder malfunctioned and preliminary hearing testimony was lost. Defendant moved for dismissal of the information and was successful. This Court reversed holding that when testimony is unintentionally lost prior to trial and the defendant claims a deprivation of Sixth Amendment rights, the defendant must show prejudice. *See also, State v. Chouinard,* 96 N.M. 658, 634 P.2d 680 (1981).

The prejudice argued by defendant is his inability to impeach Chavez at trial, assuming that Chavez' statements to the grand jury differed from the testimony at trial. *Valles v. State,* 90 N.M. 347, 563 P.2d 610 (Ct.App.1977).

Theresa Chavez, in the challenged grand jury transcript, testified, in English, that she saw Velasquez cut Chacon, that she was three or four feet away, that Chacon was alone and that she did not see a knife. She testified, in Spanish, that she did not see a weapon and that Velasquez and Chacon did not get into a fight *before* Velasquez went from one car to another.

At trial, with the use of an interpreter, Theresa had greater difficulty understanding the questions than she did before the grand jury. Still, she testified on direct examination consistently with her grand jury testimony and also elaborated on it.

Theresa testified that she saw a stabbing, but never saw the weapon used in the stabbing. On cross-examination, she admitted that she had given a statement, approximately two weeks after the stabbing, to a state police officer, that Chacon ran over to defendant. The context was that this occurred prior to the stabbing.

Theresa's trial testimony was favorable to defendant's theory of self-defense. In light of the congruity between Theresa's grand jury testimony and her trial testimony on direct examination, and defendant's successful impeachment of Theresa on cross-examination, there is no indication that the small portion of the grand jury proceedings which occurred in Spanish in any way deprived defendant of the ability to cross-examine Theresa at trial. In this situation, the following from *State v. Chouinard, supra,* is applicable:

Determination of materiality and prejudice must be made on a case-by-case basis. The importance of the lost evidence may be affected by the weight of other evidence presented, by the opportunity to cross-examine, by the defendant's use of the loss in presenting the defense, and other considerations. The trial court is in the best position to evaluate these factors.

Defendant was not entitled to dismissal of the indictment on the basis of the grand jury proceedings.

3. *Whether the court erred in giving an unrequested self-defense instruction.*

Defendant requested and received two self-defense instructions, U.J.I. 41.41, (1982 Repl.Pamph.), N.M.S.A. 1978 (justifiable homicide) and U.J.I. 41.60, (1982 Repl. Pamph.) N.M.S.A. 1978 (assailed person need not retreat). The court added, on its own, U.J.I. 41.61, (1982 Repl.Pamph.) N.M. S.A. 1978 (limitations on self-defense when the defendant is the aggressor). Defendant objected on the ground that there was no testimony about an actual fight. The court defined "fight" as an altercation between two people and felt that there was evidence from which the jury could infer that defendant was the aggressor in the alterca-

tion. Defendant contends on appeal that besides the absence of evidence of a fight, the instruction was prejudicial because it conflicted with the other instructions and would tend to confuse the jury.

Defendant argues that the limiting instruction (41.61) conflicts with the other self-defense instruction just as the court's limiting self-defense instruction in *State v. Garcia,* 83 N.M. 51, 487 P.2d 1356 (Ct.App. 1971) conflicted with the other instructions. In *Garcia* the trial court's instruction was that once the decedent no longer presented a danger, the defendant had no legal excuse to take further action. This Court found that the instruction confused and apparently contradicted the rule of "apparent necessity"—that the reason for the killing was to be judged on the reasonableness of defendant's belief. In *Garcia* the trial court's instruction had the effect of eliminating defendant's objective state of mind as an element.

■ The present case differs from *Garcia, supra.* The instructions were not conflicting or confusing. U.J.I. 41.41 (1982 Repl.Pamph.), N.M.S.A. 1978 states the elements of self-defense; U.J.I. 41.60 (1982 Repl.Pamph.), N.M.S.A. 1978 states that a person threatened with an attack need not retreat. U.J.I. 41.61 (1982 Repl.Pamph.), N.M.S.A. 1978 deals with the situation where defendant has started the fight with a force not ordinarily creating a substantial risk of death or great bodily harm, and the other responds with a force creating that substantial risk. Once the other responds with the greater force, the jury may find that self-defense, as defined in U.J.I. 41.41, is available to the defendant.

Defendant also argues that U.J.I. 41.61 is inappropriate because no fight occurred. Defendant seems to argue that because he and the victim were not engaged in a drawn-out battle there was no fight. There was evidence that a bottle was thrown, and defendant responded. The evidence was sufficient to establish a fight.

4. *Sufficiency of the evidence to support voluntary manslaughter.*

■ Defendant claimed that the trial court should have directed a verdict for him because the evidence was insufficient to support voluntary manslaughter. He has overlooked his own testimony in making this contention.

■ We view the evidence in the light most favorable to support the conviction. *State v. Lankford,* 92 N.M. 1, 582 P.2d 378 (1978). According to defendant a bottle was thrown at him, and a man with whom he had had trouble rushed him with something that looked like a knife. Facts similar to these were found sufficient to support voluntary manslaughter in *State v. Benavidez,* 94 N.M. 706, 616 P.2d 419 (1980). Moreover, when facts are present which support a plea of self-defense, it is not unreasonable that if the plea fails, the accused should be found guilty of voluntary manslaughter. *State v. Melendez,* 97 N.M. 738, 643 P.2d 607 (1982); *State v. Lopez,* 79 N.M. 282, 442 P.2d 594 (1968).

Defendant's conviction is affirmed.

IT IS SO ORDERED.

WOOD, J., concurs.

WALTERS, C.J., concurs in part, dissents in part.

WALTERS, Chief Judge (concurring in part, dissenting in part.)

I concur in the discussion of Points 1, 3 and 4. I do not agree that defendant was not prejudiced as a result of the incompleteness of the record of testimony presented to the grand jury by an eye witness. No Spanish interpreter could be found, it is said, in Rio Arriba County. The transcript of the grand jury testimony shows four occasions when in answer to typical leading questions used throughout examination of this witness, the reporter recorded the witness's response as "(Speaking Spanish)." There is not the slightest clue how long the "Speaking Spanish" answers ran on, or what they contained. My disagreement with the majority on this issue is predicated on the following:

1. One of the purposes of recording grand jury testimony is to "ensur[e] that the defendant may impeach a prosecution witness on the basis of his prior inconsistent statements before the grand jury." 8 Moore's Federal Practice 6–17, ¶ 6.01[7]. When failure to record testimony creates a vacuum, it is asking the defendant to perform an impossibility by requiring him to prove that trial testimony differed from grand jury testimony to demonstrate he was prejudiced. How can he compare one record with another that is incomplete? Impingement upon an accused's right to confront a witness against him is unconstitutional. *Mascarenas v. State,* 80 N.M. 537, 458 P.2d 789 (1969).

2. The requirement of recording testimony is mandatory. Section 31–6–8, N.M.S.A. 1978. N.M.R.Crim.P. 29.2, N.M.S.A. 1978 (1982 Cum.Supp.), presupposes the recording of grand jury testimony. Cases collected in the annotation of that rule bear out the presupposition.

3. *Pedroncelli,* upon which the majority relies, is distinguishable. That case was concerned with loss of testimony presented at a preliminary hearing. Counsel for defendant fully participates in preliminary hearing proceedings and is fully advised of the testimony adduced. He knows whether the evidence given then conflicts with testimony at trial; he is not defending (or attempting to impeach) in the dark.

4. The majority cites *State v. Chouinard* for the proposition that each case is to be decided on its own facts. *Chouinard* also declares that the good faith of the State is irrelevant if lost evidence is material and prejudicial to the defendant. If witness Chavez's grand jury testimony was different from what she gave at trial, it was material. N.M.R.Evid. 401, 607, 613, N.M.S.A. 1978. If it was material on that ground, its loss was prejudicial to defendant's constitutional right of confrontation. *Valles v. State,* 90 N.M. 347, 563 P.2d 610 (Ct.App.1977).

5. The grand jury questions asked this witness were so consistently and blatantly leading as to amount to testimony by the prosecutor. We said in *State v. Sanchez,* 95 N.M. 27, 618 P.2d 371 (Ct.App.1980), that this method of questioning violated § 31–6–7, N.M.S.A. 1978.

6. Defendant does not complain of invalidity of the indictment because of improper influence by the State on the grand jury—which is the thrust of all of the federal cases cited by the majority. Defendant claims he was deprived of a "most useful tool" in "effective cross-examination" (*State v. Romero,* 87 N.M. 279, 532 P.2d 208 (Ct.App.1975)), which amounts to denial of his Sixth Amendment privilege, and thus prejudiced conduct of the *trial.* Defendant asks that the indictment be dismissed as a penalty for prosecutorial misconduct in depriving him of a trial right, not because the indictment was invalid from the outset. Improper prosecutorial influence on the grand jury differs distinctly from the State's obligation to preserve grand jury evidence for use at trial. The federal cases cited, and the discussion of whether probable cause existed to indict, have no application to the issue presented here by defendant, nor do they answer the question raised.

For the foregoing reasons, I respectfully disagree with the majority's discussion of the issue raised in defendant's Point II.