This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-41295**

**STATE OF NEW MEXICO,**

>        Plaintiff-Appellee,

v.

**BRUCE LEE,**

>        Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Conrad F. Perea, District Court Judge**

Raúl Torrez, Attorney General
Felicity Strachan, Assistant Solicitor General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Santa Fe, NM
Steven J. Forsberg, Assistant Appellate Defender
Albuquerque, NM

for Appellant

### MEMORANDUM OPINION

**MEDINA, Chief Judge.**

**{1}** Defendant Bruce Lee appeals his conviction of one count of criminal sexual contact of a minor in the second degree (child under the age of thirteen) (CSCM), contrary to NMSA 1978, Section 30-9-13(B)(1) (2003). On appeal, Defendant argues (1) he received ineffective assistance of counsel; and (2) there was insufficient evidence to support a conviction because the testimony of the victim (Victim) was unreliable given her mental health. For the reasons that follow, we affirm.

**BACKGROUND**

**{2}**     The following facts were presented during Defendant's trial. Victim testified that on July 15, 2015, she was lying on her bed wearing pajamas watching television when Defendant came in and lay down next to her. Defendant put his hand down Victim's pajama pants and "started touching [her] vagina." Victim was twelve-years-old at the time. After some time, Victim's mother (Mother) came in the room, yelled at Defendant, slapped him, and both Mother and Defendant left Victim's room.

**{3}**     Mother called 911 and a recording of that call was played for the jury. During the 911 call, Mother stated that she "just caught [her] husband [Defendant] molesting [their] daughter." Mother additionally stated that she "just caught him red-handed" and "he was touching her in the crotch." Mother said Defendant was blaming Victim and said Victim "enticed him." Mother also stated that Victim told her about a previous incident, but Mother did not believe her; Mother believed Defendant instead.

**{4}**     The detective for the case (Detective) explained that the first detective stopped investigating the case in 2015 after speaking with Mother. Detective attested that typically, officers do not close the case solely based on a witness who recants, and they continue investigating. Detective reopened the case in 2018 and interviewed Mother, during which he asked her about the 911 call and her report. Mother told him that she never made an allegation against Defendant, Victim was lying about the incident, and the previous detective made a false report. The Detective's investigation resulted in a grand jury indictment against Defendant.

**{5}**     At trial, Mother testified that she saw Defendant "tickling" Victim's lower abdomen. Mother explained that due to her own childhood sexual trauma, she was unsure of why she called 911 and made the allegation against Defendant. Mother testified that Victim later confirmed the allegation was not true and that Victim only wanted to get Defendant in trouble.

**{6}**     The State's expert witness, qualified in the areas of child sexual trauma and related fields, testified about a common phenomenon where mothers who were abused as children are unable to believe their own children's allegations of sexual abuse and are likely to blame the victim. The expert opined that "victim blaming" is "a well-studied phenomenon" and it is "incredibly common" for the victim to be called a liar or mentally ill, among other things, in an effort to "shift[ the] responsibility from the . . . alleged offender onto the victim." According to the expert, when a child makes a disclosure but a mother questions the child and accuses the child of lying or making up the accusation, the likelihood that the child will recant the statement "skyrockets."

**{7}**     Defendant presented evidence of Victim making three unsubstantiated claims of physical abuse and neglect to New Mexico Children, Youth, and Families Department (CYFD) for the proposition that Victim made false allegations of sexual assault. The evidence included testimony from a family therapist who treated Victim and her family for almost two-and-a-half years from April 2016 to August 2018. The therapist testified

that she provided therapy to Victim, her Mother, and the family as a unit, including Defendant. The therapist wrote a letter to CYFD, which was entered as an exhibit at trial. According to the therapist, Victim stated she made the claims of abuse to get her parents into trouble and live in foster care.

**{8}** Victim confirmed that she told the therapist that this incident did not happen. Victim explained that she recanted because "my mom was consistently telling me that nothing happened and that [Defendant] was just touching my belly . . . and after hearing it for so long, I just believed it and told my therapist . . . nothing happened." Victim testified, "I know it did happen" because she "had time to process it in therapy and . . . relive it in safe ways and I was able to determine that it did happen."

**{9}** The State's expert witness testified that it is common for a victim to recant an allegation if they lack a supportive caregiver who believes the child's allegation. In the expert's opinion, she would "absolutely expect [a] victim to recant" their statement if they had a mother who, for two to three years, told them it did not happen. The expert further stated that a child would not disclose abuse or would change their story when they are in an unsafe environment, including an unsafe therapy environment.

**{10}** The jury convicted Defendant of CSCM. This appeal followed.

**DISCUSSION**

**I.        Ineffective Assistance of Counsel**

**{11}** Defendant argues he received ineffective assistance of counsel at trial. Defendant's argument on this claim consists of one paragraph in which Defendant "maintains the claims of ineffective assistance of counsel made in the docketing statement, but acknowledges that "habeas corpus proceedings [are] the preferred avenue for adjudicating ineffective assistance of counsel claims." *Duncan v. Kerby*, 1993-NMSC-011, ¶ 4, 115 N.M. 344, 851 P.2d 466.

**{12}** "We review claims of ineffective assistance of counsel de novo." *State v. Pitner*, 2016-NMCA-102, ¶ 14, 385 P.3d 665 (internal quotation marks and citation omitted). "[T]here is a strong presumption that trial counsel's conduct falls within the wide range of reasonable professional assistance." *State v. Garcia*, 2011-NMSC-003, ¶ 33, 149 N.M. 185, 246 P.3d 1057 (internal quotation marks and citation omitted). A prima facie case of ineffective assistance of counsel is made "by showing: (1) that defense counsel's performance fell below the standard of a reasonably competent attorney; and (2) that due to the deficient performance, the defense was prejudiced." *State v. Mosley*, 2014-NMCA-094, ¶ 19, 335 P.3d 244. (alteration, internal quotation marks, and citation omitted). Because the record is frequently insufficient to establish whether an action taken by defense counsel was not reasonable or if an error caused prejudice, ineffective assistance of counsel claims are often better addressed in habeas corpus proceedings. *See State v. Arrendondo*, 2012-NMSC-013, ¶ 38, 278 P.3d 517.

**{13}** Preliminarily, we note that issues listed in a docketing statement, which have not been argued in the brief in chief, are deemed abandoned. *See State v. McGill*, 1976-NMCA-100, ¶ 1, 89 N.M. 631, 556 P.2d 39. Such is the case here. In this instance there is a lack of facts or argument demonstrating how counsel's representation resulted in prejudice. Consequently, we conclude that Defendant failed to establish a prima facie case of ineffective assistance of counsel.[1] *See State v. Bahney*, 2012-NMCA-039, ¶ 48, 274 P.3d 134. This determination does not preclude Defendant's ability to bring this claim through a writ of habeas corpus petition. *See Duncan v. Kerby*, 1993-NMSC-011, ¶ 4, 115 N.M. 344, 851 P.2d 466 (recognizing New Mexico's preference for "habeas corpus proceedings . . . for adjudicating ineffective assistance of counsel claims").

## II.     Sufficient Evidence to Support the Conviction of CSCM

**{14}** Defendant argues that his conviction for CSCM is not supported by substantial evidence. Our standard of review for the sufficiency of evidence is highly deferential to the jury's verdict. *State v. Hixon*, 2023-NMCA-048, ¶ 44, 534 P.3d 235. "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Montoya*, 2015-NMSC-010, ¶ 52, 345 P.3d 1056 (internal quotation marks and citation omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Arvizo*, 2021-NMCA-055, ¶ 47, 499 P.3d 1221 (internal quotation marks and citation omitted). We "view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. The question on appeal is whether the jury's "decision is supported by substantial evidence, not whether the [fact-finder] could have reached a different conclusion." *State v. Ernesto M., Jr.* (*In re Ernesto M., Jr.*), 1996-NMCA-039, ¶ 15, 121 N.M. 562, 915 P.2d 318. We therefore disregard all evidence and inferences that support a different result. *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829.

**{15}** In the present case, the district court instructed the jury on the elements of CSCM in part as follows:

> For you to find [D]efendant guilty of criminal sexual contact of a child under the age of thirteen (13), the [S]tate must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:
>
> 1.     [D]efendant touched or applied force to the unclothed vulva of [Victim];
>
> 2.     [Victim] was a child under the age of thirteen (13);

---

[1]This Court appreciates appellate counsel's concession that the transcript reveals trial counsel testified that he did advise Defendant of his right to testify.

3. This happened in New Mexico on or about the 15th day of July, 2015.

This instruction tracks the approved uniform jury instruction containing the statutory elements for CSCM. *See* UJI 14-925 NMRA; § 30-9-13(B)(1).

**{16}** We agree with the State that it presented sufficient evidence establishing that Defendant committed CSCM. Victim testified that on July 15, 2015, when she was twelve years old, Defendant entered her bedroom, laid down next to her and put his hand down her pajama pants and touched her vagina.[2] *See State v. Ramirez*, 2018-NMSC-003, ¶¶ 7-13, 409 P.3d 902 (recognizing that evidence of a single witness may support a guilty verdict). Here however, the evidence also showed that Mother called 911 soon after witnessing the incident and stated that she "just caught [Defendant] molesting [their] daughter." Viewing this evidence in the light most favorable to the verdict, we conclude that sufficient evidence supports the jury's guilty verdict.

**{17}** To the extent Defendant contends that the witnesses were unreliable, aside from asserting that Victim "suffered from severe mental illness," Defendant never challenged Victim's competency to testify and did not argue or demonstrate on appeal that Victim was not a reliable or competent witness. *See* Rule 11-601 NMRA (stating that "[e]very person is competent to be a witness unless these rules provide otherwise"). Defendant does not support his claim that the witnesses were unreliable with any form of argument. "We will not review unclear arguments, or guess at what a party's arguments might be." *Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53 (internal quotation marks and citation omitted). To the extent Defendant may be basing his argument on evidence that both Victim and her mother made inconsistent statements, "[i]t is for the trier of fact to weigh the evidence, determine the credibility of witnesses, reconcile inconsistent statements of the witnesses, and determine where the truth lies." *Jaynes v. Wal-Mart Store No. 824*, 1988-NMCA-076, ¶ 8, 107 N.M. 648, 763 P.2d 82.

**{18}** Reviewing the evidence in the light most favorable to the conviction, we conclude that sufficient evidence supports Defendant's conviction.

**CONCLUSION**

**{19}** For the forgoing reasons, we affirm.

**{20} IT IS SO ORDERED.**

**JACQUELINE R. MEDINA, Chief Judge**

**WE CONCUR:**

---

2In closing arguments, the State asserted that Victim described the vulva but used the common term, vagina. The State provided a jury instruction with the definitions of "vulva" and "vagina."

**SHAMMARA H. HENDERSON, Judge**

**GERALD E. BACA, Judge**