**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Robert Harris CARTWRIGHT,
Defendant–Appellant.**

No. 79–5372.

United States Court of Appeals,
Fifth Circuit.
Unit A

Dec. 18, 1980.

Robert Everett L. Looney, Austin, Tex., for defendant–appellant.

Anna E. Stool, Asst. U.S. Atty., Houston, Tex., for plaintiff–appellee.

Before WISDOM, AINSWORTH and GEE, Circuit Judges.

WISDOM, Circuit Judge:

Robert Harris Cartwright appeals his jury conviction on 14 counts of bank fraud under four federal statutes. We affirm.

For a period of about two years, beginning in May 1975, Robert Harris Cartwright obtained a number of loans, totaling over a quarter of a million dollars, from five Houston lending institutions. All of these institutions were federally insured either by the Federal Deposit Insurance Corporation (FDIC) or by the Federal Savings & Loan Insurance Corporation (FSLIC). Cartwright borrowed the money under false pretenses, using his father's name, submitting false financial statements, and on one occasion misrepresenting the use to which the loan money would be put. In 1976, about nine months after embarking on his trail of deceit, Cartwright became chief shareholder and president of Sinton Savings Association, which was also federally insured. Again by misrepresentation, he convinced the board of directors to purchase Sinton Service Corporation, a mortgage banking business wholly owned by himself. Through various fraudulent devices, Cartwright then began converting Sinton Service Corporation funds to his own personal use and to the personal use of others, in some cases using the funds to pay off debts he had previously contracted under false pretenses.

A federal grand jury returned a thirty–count indictment against Cartwright. For his fraudulent activities involving Sinton Service Corporation funds, he was convicted on five counts of misapplying the funds of a federally insured institution in violation of 18 U.S.C. § 657, two counts of falsifying documents in violation of 18 U.S.C. § 1001, and one conspiracy count under 18 U.S.C. § 371. For his fraudulent activities involving other Houston–area lenders, he was convicted on six counts of making false statements to federally insured lending institutions in violation of 18 U.S.C. § 1014. Cartwright was sentenced to three four–year terms to be served consecutively.

Cartwright's first challenge addresses the counts that involve his illegal use of Sinton Service Corporation funds. He contends that those misdealings are beyond the reach of the two federal statutes under which he was charged, 18 U.S.C. §§ 657 and 1001. He apparently agrees that Sinton Savings Association, as a federally insured lender, is protected by these statutes from the types of fraud he is accused of committing. Cartwright points out, however, that his actions involved only the funds of Sinton Service Corporation, an entity which, though wholly–owned by Sinton Savings, was not itself federally insured. Moreover, Cartwright argues, even if the statutes do reach frauds on wholly–owned subsidiaries of federally insured institutions, Sinton Service Corporation never became a wholly–owned subsidiary because the purchase of Sinton Service by Sinton Savings was not approved by the state savings and loan commissioner.

■ Under 18 U.S.C. § 657, it is a criminal offense for an officer of a federally insured lending institution to misapply funds "belonging to" that institution. It is perhaps true that under principles of corporations law the assets of a wholly–owned subsidiary do not "belong" to the sole shareholder in a legal sense. That, however, is merely a byproduct of the corporate fiction, a fiction readily abandoned when used "to defeat public convenience, justify wrong, protect fraud, or defend crime". *Quinn v. Butz*, D.C.Cir. 1975, 510 F.2d 743, 758. Thus, the fiction was cast aside where a majority stockholder sought to shield himself from criminal liability for false statements he made to a federal agency. *Sell v. United States*, 10 Cir. 1964, 336 F.2d 467, 471–72. Similarly, this Circuit disregarded the corporate fiction in a recent criminal case, brought under a fraud statute related to section 657, where the defendant made the same argument as Cartwright attempts here. *See United States v. Kehoe*, 5 Cir. 1978, 573 F.2d 335. As the Court pointed out in *Kehoe*, it is difficult to assail the argument that depleting the assets of a wholly–owned subsidiary reduces the value of the subsidiary's stock and thus directly diminishes the assets of the parent. We

therefore conclude that the funds of a wholly–owned subsidiary "belong to" the parent within the meaning of 18 U.S.C. § 657.

Section 1001 of the Criminal Code reaches Cartwright's mishandling of Sinton Service Corporation funds somewhat differently. It prohibits, among other things, falsification of documents "in any matter within the jurisdiction of any department or agency of the United States". The issue then is whether the business dealings of a wholly–owned subsidiary of an institution insured by the FSLIC are matters within the jurisdiction of that agency.

■ We note at the outset the Supreme Court's command that the term "jurisdiction" should not be given a "narrow or technical meaning for purposes of § 1001". *Bryson v. United States*, 1969, 396 U.S. 64, 70, 90 S.Ct. 355, 359, 24 L.Ed.2d 264. Though the term has never been defined explicitly by either the Supreme Court or this Court, the Court of Appeals for the Ninth Circuit has held that it is synonymous with "power to act". *Ogden v. United States*, 9 Cir. 1962, 303 F.2d 724, 743. Other courts have adopted the same formula with some slight modifications. *See United States v. Adler*, 2 Cir. 1967, 380 F.2d 917; *Friedman v. United States*, 8 Cir. 1967, 374 F.2d 363. Without necessarily limiting this Court to that definition, we adopt it to demonstrate that Sinton Service Corporation's activities were matters within the jurisdiction of the FSLIC.

■ The FSLIC has authority to require the institutions it insures to permit "such examinations as in the judgment of the Corporation may from time to time be necessary for its protection and the protection of other insured institutions". 12 U.S.C. § 1726(b). The FSLIC also has enforcement powers to remedy unsound business practices, including the power to issue cease and desist orders and to suspend or remove directors and officers of insured institutions. 12 U.S.C. § 1730(e)–(g). These examination and enforcement powers allow the FSLIC to evaluate the business practices of its insureds so that it can anticipate

and perhaps head off financial difficulties that could lead to collapses. Because the business dealings of a wholly–owned subsidiary can have a profound effect on the financial health of the parent, sections 1726 and 1730 undoubtedly contemplate FSLIC authority over the business activities not only of its insureds, but of their wholly–owned subsidiaries as well. Thus, because Sinton Service Corporation was wholly owned by Sinton Savings Association, its business activities were a matter within the "jurisdiction" of the FSLIC in the non-technical sense of that word, and Cartwright's falsification of documents connected with those activities were proscribed by the plain meaning of 18 U.S.C. § 1001.

■ The argument that Cartwright cannot be held criminally liable for misuse of Sinton Service Corporation funds because Sinton Service Corporation was never a wholly–owned subsidiary of Sinton Savings Association also fails. In the first place, although Sinton Savings Association was required by Texas law to obtain approval from the state savings and loan commissioner for its purchase of Sinton Service Corporation, failure to do so did not render the transaction void under Texas law as Cartwright contends. The statute governing Texas savings and loan associations also prescribes the remedies for violations of the statute; none of those remedies indicate that an unapproved purchase is void or that the commissioner has authority to declare it void. *See* Tex.Rev.Stat.Ann. art. 852a § 8.13 (Vernon Supp.1980). In fact, the remedy ordered by the commissioner in this case–divestiture of Sinton Service Corporation–clearly indicates that the purchase was not considered void. But even if this transaction would be considered void under Texas law, questions concerning the existence of a parent–subsidiary relationship are, for purposes of enforcing the federal statutes here in issue, matters of federal law. We have no trouble concluding that, since Sinton Service conducted business for a full year as a wholly–owned subsidiary of Sinton Savings Association, a parent–subsidiary relationship existed between the two, and that Cartwright's frauds on Sinton Ser-

vice Corporation were thus within the scope of the federal statutes under which he was charged.

Cartwright's other major contention is that the joinder of his offenses in a single indictment was improper under Rules 8(a) and 14 of the Federal Rules of Criminal Procedure. Offenses can be joined in a single indictment under Rule 8(a) if they "are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan." There are essentially two classes of offenses here–those involving misapplication of Sinton Service Corporation funds and those involving false statements made to other lenders. All the offenses involving Sinton Service Corporation funds are clearly of the same or similar character; Cartwright does not contend otherwise. Nor does he contend that the remaining counts involving false statements to other lenders are not all similar in character. What he does contend is that the misapplication offenses are not similar in character to the false statement offenses, and that the two classes of offenses are not otherwise connected together in any way.

■ We conclude that the two classes of offenses are substantially similar in character because all of the offenses were crimes of deceit involving federally insured lending institutions. But even assuming arguendo that this similarity is not enough to qualify the offenses as "of the same or similar character", there is another ground on which joinder was proper under Rule 8(a). The misapplication offenses were based on transactions connected together with transactions that gave rise to the false statement offenses. For example, in two instances Cartwright used Sinton Service funds to pay off loans that were the basis for some of the false statement charges. In another instance, Cartwright used Sinton Service funds to purchase a certificate of deposit that was offered as security for yet another loan that was the basis for false statement charges. Of the eleven counts

relating to misapplication of Sinton Service funds, all but four were connected to the counts involving false statements in ways similar to those described above. The four unconnected counts were properly joined in the indictment because, as stated earlier, they were indisputably similar to those misapplication counts that were connected to false statement counts. In these tangled circumstances, joinder was proper under Rule 8(a).

█ Rule 14 of the Federal Rules of Criminal Procedure allows the trial court in its discretion to sever counts that are properly joined under Rule 8(a) if the defendant would be unduly prejudiced by joinder. Cartwright has not demonstrated that he was prejudiced. His sole allegation of prejudice is that joinder caused the jury to cumulate evidence against him and to convict him on charges that were not fully proven. That the jury convicted him on less than half of the counts with which he was charged is telling proof that this did not occur.

Cartwright challenges his conviction on three other grounds. He argues that several counts of the indictment were insufficient, that 18 U.S.C. § 657 is unconstitutionally vague and overbroad, and that the district court erred in failing to grant a continuance so that he could obtain additional testimony. We have considered these contentions and find them to be without merit.

The judgment of the district court is AFFIRMED.