The **PEOPLE** of the State of Colorado, Plaintiff-Appellee,

v.

**William T. CASPER,**
Defendant-Appellant.

No. 78–595.

Colorado Court of Appeals,
Div. II.

Feb. 5, 1981.

Rehearing Denied March 12, 1981.

Certiorari Denied July 6, 1981.

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Edward G. Donovan, Asst. Atty. Gen., Nevin A. Seeger, Designated Counsel, Denver, for plaintiff-appellee.

J. Gregory Walta, Public Defender, Norman R. Mueller, Shelley Gilman, Deputy State Public Defenders, Denver, for defendant-appellant.

SMITH, Judge.

Defendant William T. Casper, appeals from a judgment of conviction entered upon a jury verdict finding him guilty of aggravated robbery. We affirm the conviction.

The robbery of which defendant was convicted occurred at approximately 6:50 p. m. on December 6, 1977. A man described by witnesses as being approximately five feet eleven inches tall, wearing a tan trenchcoat, and a reddish brown wig entered the Dependable Cleaners establishment a few minutes prior to its closing. With his right hand he produced a brown handled handgun, which he pointed at the people in charge of the store and demanded cash, specifically, twenty dollar bills, but declined to accept any checks. Having obtained the money, he hurriedly left.

### Similar Transaction Evidence

At trial, evidence was offered concerning the aggravated robbery of another Dependable Cleaners which had occurred at approximately the same time of day on December 14, 1977. In that robbery, the manner of conducting the robbery and the description of the robber were strikingly similar to those in the instant case, and defendant here had been identified as the perpetrator of that offense.

The trial court admitted this evidence of the similar transaction for the purpose of establishing common plan, scheme, design, and identity, and upon the reception of the evidence, it instructed the jury that its consideration of that evidence was limited to those issues. It is the reception of that evidence which Casper here asserts constitutes reversible error in his trial. We reject that contention.

In dealing with this issue we must, of necessity, distinguish this case from an earlier ruling rendered by this court in a case involving this same defendant, *People v.*

*Casper*, Colo.App., 620 P.2d 48, (1980) (cert. granted). *(Casper I)*

In *Casper I*, William T. Casper was convicted of the December 14, 1977, robbery, and in that case we ruled that evidence of the December 6 robbery, the offense charged here, was improperly admitted by the trial court as a similar transaction for the purpose of establishing "scheme, plan, design, or *intent*." Here, because of the purpose for which the evidence was received and considered by the jury, we find no error in the admission of the similar transaction evidence.

Similar transaction evidence has long been a problem in the criminal law of Colorado. In *Stull v. People*, 140 Colo. 278, 344 P.2d 455 (1959), the dangers inherent in the admission of similar transaction evidence were thoroughly discussed, and procedural requirements were laid down to insure that such evidence would only be considered for the limited purpose for which it had been tendered and received.

In *People v. Honey*, Colo., 596 P.2d 751 (1979), the Supreme Court subsequently addressed the much more complex issues surrounding the evaluation of "similar transaction evidence" in order to determine whether it could properly be admitted. *Honey* established three substantive tests, each of which must be met before such evidence can be received and can be dealt with under the procedural requirements of *Stull, supra.* These tests are: (1) Is there a valid purpose for which the evidence is offered? (2) Is the evidence relevant to a material issue in the case? (3) Does the probative value of the evidence of the prior act, considering the other evidence which is relevant to the issue, outweigh the prejudice to the defendant which would result from its admission?

What may at first blush appear to be an inconsistency between our ruling in *Casper I* and the instant case arises from our consideration and resolution of the second of these three issues—to what material issue in the case is the evidence directed?

Part of the problem in "similar transaction evidence" cases may arise from the

way in which courts and counsel have traditionally described this type of evidence. Similar transaction evidence is often described as showing common plan, scheme, design, modus operandi, intent, and identity. The problem that arises from grouping all of these words together is that, when considered in the light of material issues in a case, they do *not* serve the same function and must be treated differently. To illustrate: *identity* and *intent* are each independent, ultimate issues which *must* be determined in every criminal case. It is axiomatic that to sustain *any* criminal conviction it must be proven, (1) that a prohibited act or acts occurred; (2) that such act or acts were done with the intention to commit a crime; and (3) that the person committing them was, in fact, the person charged.

Common plan, scheme, design, or modus operandi, on the other hand, are *not* ultimate issues but are rather methods or logical inferences by which *either* intent or identity may be proven. The character of such evidence and the manner in which it is applied, however, are quite different, depending upon whether it is *identity* or *intent* that is sought to be proven.

Justice Rovira, in *Honey, supra,* demonstrated how similar transaction evidence, or evidence of plan, scheme, design, or modus operandi, could be used to prove *intent,* as distinguished from *identity,* and held in that case that where intent can be inferred from the commission of the act itself, evidence of the prior transaction is not admissible to prove intent. That was the case in *Casper I,* where the similar transaction evidence was offered for the purpose of showing plan, scheme, design, and, thus, intent. No assertion was made in that case that the evidence was introduced for the purpose of establishing identity.

■ In the instant case, however, the similar transaction evidence was introduced for the express purpose of proving identity. When introduced as relevant to *that* issue, evidence of common plan, scheme, design or modus operandi do not require a continuum or unbroken sequence of acts constituting both crimes. It is sufficient, on the issue of *identity,* that there are distinctive characteristics common to both crimes sufficient to allow reasonable jurors to infer that both crimes were committed by the same person.

■ In the present case, the trial court recognized this distinction, and after a thorough analysis of how each crime was committed, determined correctly that there were a sufficient number of distinctive characteristics common to both crimes as to make the similar transaction evidence relevant to the material issue of *identity.* In addition, the trial court made the other requisite findings under *Honey, supra,* and carefully followed the procedural requirements set down in *Stull, supra.* In the instant case, we therefore find no error in the admission of the similar transaction evidence.

### Defendant's Decision Not to Testify

■ Defendant also contends that the trial court erred in denying his *in limine* motion to prohibit the prosecution from introducing suppressed evidence for any purpose, and asserts that as a result he was denied his right to testify in his own behalf. Prior to taking the witness stand, defendant sought to obtain a ruling from the trial court that use of evidence suppressed by the trial court at an earlier hearing would not under any circumstances be permitted. Prior to the court's denial of defendant's motion there was an extended colloquy in which the judge remarked that although he thought that, if the defendant testified the suppressed evidence might properly be used on cross-examination for impeachment purposes, he would have to defer ruling on that issue until the direct examination was completed and specific questions asked on cross-examination.

Defendant cites, as authority for his assertion that the trial court erred, our recent case of *People v. Salazar,* Colo.App., 610 P.2d 1354 (1980). That case is inapposite.

Here, the trial court specifically declined to rule, in advance, on defendant's attempt to limit the scope of the evidence which

could be used in connection with cross-examination. In response to the defendant's assertion that previously suppressed evidence would not be admissible for any purpose, the trial court was only commenting that under some circumstances the suppressed evidence might be admissible to impeach the defendant, depending upon what testimony was presented on direct examination, and what questions were asked on cross-examination.

That was an accurate statement of the law. *See United States v. Havens*, 446 U.S. 620, 100 S.Ct. 1912, 64 L.Ed.2d 559 (1980), where previously suppressed evidence was deemed admissible for impeachment on cross-examination of a defendant.

The trial court's refusal to grant defendant's motion based upon the fact that the issue had not as yet arisen was entirely correct in light of *Havens, supra*. The defendant's decision not to testify was not influenced either by an erroneous ruling of the trial court, or by the trial court's failure to rule on a issue already before the court. The only factors affecting defendant's decision therefore were those which under the law were proper for him to consider. This argument is thus without merit as are defendant's other assertions of error.

Judgment affirmed.

PIERCE, J., concurs.

STERNBERG, J., specially concurs.

STERNBERG, Judge, specially concurring.

I agree that this conviction should be affirmed, but am not persuaded by the majority's attempt to harmonize the affirmance here with the reversal in *People v. Casper*, Colo.App., 620 P.2d 48, (1980). Rather, I would affirm this conviction for the reasons stated in the dissenting opinion there, where Casper's conviction was reversed because the jury was not told it could consider evidence of a prior robbery as probative of identity, even though identity would have been a "valid purpose" for receiving the evidence.

Additionally, the complex analysis engaged in by the majority to justify receipt of similar transaction evidence here because it is probative of intent, as distinguished from identity, demonstrates that the legal distinctions between the purposes for admitting or excluding evidence of similar transactions are so fine as to be indiscernible not only to many judges, but also certainly to lay juries. *See Stone, The Rule of Exclusion of Similar Fact Evidence: England*, 46 *Harv.L.Rev.* 954 (1933); *Stone, The Rule of Exclusion of Similar Fact Evidence: America*, 51 *Harv.L.Rev.* 988 (1938). Indeed, admissibility for these reasons is so intertwined that frequently the purposes are discussed without distinction. *E. g., People v. Honey*, Colo., 596 P.2d 751 (1979) (motive and intent); *People v. Ihme*, 187 Colo. 48, 528 P.2d 380 (1974) (scheme, plan, intent, or design); *People v. Mejia*, 188 Colo. 120, 534 P.2d 779 (1975) (intent, knowledge, and identity). I agree that it is better practice for trial courts to receive and instruct on similar transaction evidence with precise reference as to what it tends to prove. However, the error, if any, in receiving such evidence because it is admissible for one valid purpose (*e. g.*, intent), but not for another (*e. g.*, identity), would be, at most, harmless. *See People v. Reed*, 42 Colo.App. 275, 598 P.2d 148 (1979).

Moreover, in *Honey, supra*, the court explained that one issue to be addressed in determining admissibility of similar transaction evidence is whether it is "relevant to a material issue of the case," (emphasis supplied), indicating to me that such evidence may be admitted if it goes to *any*, but not all, of the purposes of plan, scheme, design, intent, modus operandi, motive, or identity.