664 P.2d 772

STATE of Idaho, Plaintiff-Respondent,

v.

Steven Lynn ABEL, Defendant-Appellant.

No. 13498.

Supreme Court of Idaho.

June 8, 1983.

David Z. Nevin, Boise, for defendant-appellant.

David H. Leroy, Atty. Gen., Lynn E. Thomas, Sol. Gen., Lance D. Churchill, Deputy Atty. Gen., Boise, for plaintiff-respondent.

DONALDSON, Chief Justice.

During the early morning of April 28, 1979, two women were separately assaulted. Both incidents occurred in downtown Boise within approximately forty-five minutes and five blocks of each other. The first involved one assailant and the second involved two. The defendant-appellant Abel was subsequently identified by the victims as their assailant. Later regarding the two incidents, a single information charging Abel with six criminal counts was filed. The counts included assault with intent to rape, attempted kidnapping in the second degree, and a misdemeanor battery relating to each incident. Abel made a pretrial motion for separate trials regarding the two incidents which was denied. This motion was renewed at trial and again denied.

A jury found Abel guilty of four of the six counts and guilty of a lesser included offense. Following a motion to dismiss based on I.C. § 18–301, the trial court entered judgment against Abel for attempted kidnapping in the second degree with respect to the first incident and for assault with intent to commit rape in the second incident. Abel has perfected this appeal. Abel presents two issues—(1) whether the trial court abused its discretion in denying the appellant's motions for separate trials of the counts arising out of the separate incidents and (2) whether the trial court abused its discretion in allowing testimony of a remark made by one of the assailants in the second incident. We affirm.

I.

Abel argues that the offenses arising from the two incidents were improperly joined in the same information. Our examination begins with former I.C.R. 8(a) (applicable to this case). Former I.C.R. 8(a) provided that:

"(a) JOINDER OF OFFENSES. Two (2) or more offenses may be charged on the same complaint, indictment or information and a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or based on the same act or transaction or on two (2) or more acts or transactions connected together or consistituting [constituting] parts of a common scheme or plan."

The offenses charged with respect to the first incident were of "the same or similar character" as those relating to the second incident.[1] Joinder under former I.C.R. 8(a) was therefore proper.[2]

1. Former I.C.R. 8(a) was essentially identical to its federal counterpart Fed.R.Crim.P. 8(a). While this Court has never before considered the propriety of joinder of "same or similar character" offenses, federal courts considering the question under the federal rule have found such joinder proper. See, e.g., United States v. Cartwright, 632 F.2d 1290 (5th Cir.1980); Bradley v. United States, 433 F.2d 1113 (D.C.Cir. 1969); Drew v. United States, 331 F.2d 85 (D.C. Cir.1964); see generally 8 J. Moore, Moore's Federal Practice ¶ 8.05[1] at 8–20 (2d ed. 1982) ("[T]he particular facts of each case are crucial in determining whether joinder is proper, but questions of prejudice become even more important"); 1 C. Wright, Federal Practice and Procedure: Criminal 2d § 143 (1982). While joinder may be proper under Rule 8(a), Fed.R. Crim.P. 14 to prevent prejudice may provide relief. Similarly, I.C.R. 14 allows an Idaho trial court to order separate trials of counts. This case presents our first opportunity to review a denial of a motion for separate trials of counts under I.C.R. 14. See part II, infra.

2. We note the amendment of I.C.R. 8(a) (effective July 1, 1980) which now provides:

"(a) Joinder of Offenses. Two (2) or more offenses may be charged on the same complaint, indictment or information and a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are based on the same act or transaction or on two (2) or more acts or transac-

## II.

■ Our attention next focuses on the question of separate trials under former I.C.R. 14 which provided that:

"Relief from prejudicial joinder.—*If it appears that a defendant or the state is prejudiced by a joinder of offenses* or of defendants in a complaint, indictment or information or by such joinder for trial together, *the court may order* an election or *separate trials of counts,* grant a severance of defendants or provide whatever other relief justice requires. In ruling on a motion by a defendant for severance the court may order the attorney for the state to deliver to the court for inspection in camera any statements or confessions made by the defendants which the state intends to introduce in evidence at the trial." (Emphasis added.)

Abel made a pretrial motion which was renewed at trial for separate trials of the counts arising from the first incident from those counts arising from the second incident. The motions were denied. We hold that such motions are directed to the trial court's discretion. I.C.R. 14 ("the court *may* order") (emphasis added); *see, e.g., Catlett v. State,* 585 P.2d 553 (Alaska 1978); *Stevens v. State,* 582 P.2d 621 (Alaska 1978); *People v. Matson,* 13 Cal.3d 35, 117 Cal.Rptr. 664, 528 P.2d 752 (1974); *People v. Rivas,* 197 Colo. 131, 591 P.2d 83 (1979); *State v. Matias,* 57 Haw. 96, 550 P.2d 900 (1976); *State v. Adams,* 218 Kan. 495, 545 P.2d 1134, 1143 (1976) ("The crimes charged herein are either the same or similar offenses"); *State v. Campbell,* 615 P.2d 190 (Mont.1980); *State v. McGill,* 89 N.M. 631, 556 P.2d 39 (Ct.App.1976); *State v. Weddel,* 29 Wash.App. 461, 629 P.2d 912 (1981).

The federal courts have addressed the similar question of separate trials of counts under Fed.R.Crim.P. 14 upon which former

I.C.R. 14 is based.[3] *See, e.g., Bradley v. United States,* 433 F.2d 1113 (D.C.Cir.1969); *United States v. Foutz,* 540 F.2d 733 (4th Cir.1976); *United States v. Rox,* 692 F.2d 453, 454 (6th Cir.1982) ("A defendant is prejudiced if the jury would be unable to keep the evidence from each offense separate and unable to render a fair and impartial verdict on each offense"); *United States v. Neal,* 692 F.2d 1296, 1305 (10th Cir.1982) ("For prejudice resulting from denial of a severance motion to justify reversal, the defendant must show more than just a better chance of acquittal at separate trials"); *United States v. Harper,* 680 F.2d 731, 733 (11th Cir.) (requires showing of compelling prejudice), *cert. denied,* —— U.S. ——, 103 S.Ct. 229, 74 L.Ed.2d 182 (1982). In most federal cases motions for separate trials have been denied. *See, e.g., Bradley v. United States, supra; see also* 1 C. Wright, Federal Practice and Procedure: Criminal 2d § 222 (1982) (citing cases).

Appellant relies upon *United States v. Foutz,* 540 F.2d 733 (4th Cir.1976) (reversal of convictions of two bank robberies), as support for his argument that the trial court erred in denying his motions for separate trials. The *Foutz* court with respect to a motion for severance of counts which had been properly joined as counts of the "same or similar character" stated that

"[w]hen two or more offenses are joined for trial solely on this theory, three sources of prejudice are possible which may justify the granting of a severance under Rule 14: (1) the jury may confuse and cumulate the evidence, and convict the defendant of one or both crimes when it would not convict him of either if it could keep the evidence properly segregated; (2) the defendant may be confounded in presenting defenses, as where he desires to assert his privilege against self-incrimination with respect to one crime but not the other; or (3) the jury

tions connected together or constituting parts of a common scheme or plan." By this amendment, I.C.R. 8(a) no longer permits joinder of "same or similar character" offenses; therefore, our decision has potentially limited precedential effect.

3. I.C.R. 14 was amended July 1, 1980, to provide clarification of the types of available relief from prejudicial joinder. The amendment does not impact the instant case.

may conclude that the defendant is guilty of one crime and then find him guilty of the other because of his criminal disposition." *Id.* at 736 (footnotes omitted); *see also Drew v. United States,* 331 F.2d 85, 88 (D.C.Cir.1964) (reversal of convictions of robbery and attempted robbery); 1 C. Wright, Federal Practice and Procedure: Criminal 2d § 222 at 778–79 (1982).

We will consider each of these potential sources of prejudice in turn.

### A.

■ The first involves the potential prejudice that "the jury may confuse and cumulate the evidence." In this case, we believe that there was little likelihood that such would occur. *See, e.g., Drew v. United States,* 331 F.2d 85, 91–92 (D.C.Cir.1964) (noting the "simple and distinct" test). After a close review of the entire transcript and record, we conclude that the facts relating to each incident were so distinct and simple that there was little risk that after having received proper instruction that the jury cumulated or confused the evidence. The jury was properly instructed on the reasonable doubt standard and that each count charged a separate and distinct offense which must be decided separately on the evidence and law applicable to it uninfluenced by the jury's decision on any other count.

Appellant argues that the jury cumulated evidence. We consider it worth noting that the different verdicts with respect to the two charged counts of assault with intent to rape—not guilty with respect to the first incident and guilty with respect to the second—are indicia that the jury properly differentiated and separated the evidence relative to each count. *See Nix v. State,* 653 P.2d 1093, 1099 (Alaska Ct.App.1982). We hold that the trial court did not abuse its discretion in refusing the motions on this argued ground.

■ Appellant also contends that the prosecution's closing argument was prejudicial and constituted reversible error. The thrust of this argument is that the prosecution requested the jurors to view the evidence cumulatively. We find no error. Even assuming prosecutorial misconduct in the closing argument, the misconduct would have to have been shown to have materially contributed to the verdict. *See State v. LePage,* 102 Idaho 387, 396 n. 9, 630 P.2d 674, 683, *cert. denied,* 454 U.S. 1057, 102 S.Ct. 606, 70 L.Ed.2d 595 (1981). Here, because the jury was properly instructed in the law and because of the simple and distinct nature of the evidence, we conclude that, even if the prosecutor's comments were misconduct, that the comments did not materially contribute to the verdict. *See State v. LePage, supra; State v. Griffiths,* 101 Idaho 163, 167 n. 1, 610 P.2d 522, 526 (1980); *State v. Garcia,* 100 Idaho 108, 111, 594 P.2d 146, 149 (1979).

### B.

The second potential source of prejudice under *Foutz* is not germane under the present circumstances. Since Abel's defense to each count was alibi, it is our opinion that he was not confounded in his defense by the joinder.

### C.

The third source under the present circumstances involves the potential risk of prejudice. The risk is that the jury may conclude that the defendant while not guilty of the specific charged offense is a bad person and will reach a guilty verdict on that basis.

■ Often other courts when considering similar situations have engaged in an analysis of the evidence of the separate counts to determine whether, if the counts had been tried separately, the separate evidence could have been admitted in evidence in the different trials. *United States v. Foutz,* 540 F.2d 733, 739 n. 6 (4th Cir.1976) ("Joinder of similar offenses remains proper where evidence of one crime could be admitted at a separate trial for the other"); *Bradley v. United States,* 433 F.2d 1113, 1117–21 (D.C.Cir.1969); *Stevens v. State,* 582 P.2d 621, 629 (Alaska 1978); *Nix v. State,* 653 P.2d 1093 (Alaska Ct.App.1982);

see also 8 J. Moore, Moore's Federal Practice ¶ 14.03[1] at 14–22 (2d ed. 1982); 1 C. Wright, Federal Practice and Procedure: Criminal 2d § 222 at 780–83 (1982). We believe that such an approach is useful and will therefore perform such an analysis.

■ Idaho has long embraced the general rule that evidence of other criminal acts or offenses is inadmissible to show criminal propensity, *State v. Needs,* 99 Idaho 883, 591 P.2d 130 (1979); *State v. Wrenn,* 99 Idaho 506, 584 P.2d 1231 (1978); *State v. Boothe,* 103 Idaho 187, 646 P.2d 429 (Ct. App.1982). Idaho has also recognized certain exceptions to this rule: evidence of other crimes is admissible if relevant to issues of (1) motive, (2) intent, (3) absence of mistake or accident, (4) common scheme or motive, (5) identity, and (6) other similar issues. *State v. Needs, supra* at 892–93, 591 P.2d at 139–40; *State v. Wrenn, supra* at 510, 584 P.2d at 1235; *State v. Shepherd,* 94 Idaho 227, 230, 486 P.2d 82, 85 (1971); *State v. Boothe, supra; see generally,* E. Cleary, McCormick's Handbook of the Law of Evidence § 190 (2d ed. 1972).

■ We have recognized that the admission of such evidence of other crimes requires a balancing, *see State v. Sharp,* 101 Idaho 498, 501–02, 616 P.2d 1034, 1037–38 (1980), and that the admissibility of such evidence is within the discretion of the trial judge, *State v. Thomas,* 94 Idaho 430, 489 P.2d 1310 (1971).

■ Here without question the defendant by presenting an alibi defense directly placed his identity as the perpetrator of the charged offenses in issue. This Court has previously considered evidence of separate criminal activity admissible if relevant to the issue of identity. *E.g., State v. McCormick,* 100 Idaho 111, 114, 594 P.2d 149, 152 (1979) (testimony relating to defendant's recent imprisonment relevant and admissible as to identity of the perpetrator); *State v. Morris,* 97 Idaho 420, 422, 546 P.2d 375, 377 (1976) (testimony concerning incident similar to that from which charges arose admissible as relevant to the issue of identity); *State v. Hatton,* 95 Idaho 856, 864, 522

P.2d 64, 72 (1974) ("Evidence of other crimes committed by the defendant is relevant to the issue of identity if it discloses a distinctive *modus operandi* common to the other crimes and the crime with which the defendant is charged").

While we acknowledge that the incidents at bar contain some factors which are dissimilar, most notably the first involved one assailant and the second involved two assailants, we believe the evidence of either incident when the totality of circumstances is considered would have been admissible in a separate trial of the other.

A consideration of the similarities of the incidents relating to the identity of the perpetrator reveals that: the incidents were temporally and geographically close in occurrence (45 minutes and about five blocks apart); the common assailant was dark complected, with dark hair, between five feet eight inches and six feet tall, in his late twenties, appearing to be of Mexican descent, wearing a light-blue T-shirt; the common assailant struck both victims in the face with a closed fist; and he placed his hand underneath the clothing on the chest area of both victims. Further, we note that the second victim testified that the other assailant was a thin, blond-haired man between five feet eight inches and six feet tall and the first victim testified that she saw her assailant the day following the incident in the company of a skinny, blond-haired man. The incidents were sufficiently similar to permit evidence of either to be introduced at a separate trial of the other. *See Bradley v. United States,* 433 F.2d 1113, 1120 (D.C.Cir.1969); *Nix v. State,* 653 P.2d 1093, 1097 (Alaska Ct.App.1982); *People v. Casper,* 631 P.2d 1134, 1136 (Colo.App.1981), *cert. denied,* (1981); *Cook v. State,* 629 S.W.2d 233, 236 (Tex.App.1982). We agree with the following language from *Bradley v. United States, supra* at 1120–21:

"The rule admitting proof disclosing another crime to show the accused's identity as the perpetrator of the offense on trial does not demand that the two episodes possess factual sameness in every detail. The inquiry, rather, is whether

the two have enough in common to justify a cautious judgment that the probative force of the common details received in evidence is appreciable, and so much so as in the scheme of jurisprudential values to outweigh the potential harm to the accused." (Footnotes omitted.)

Even if some part of the evidence of either of the incidents were inadmissible in a separate trial of the other, we would still find no error in the trial court's ruling because the evidence was simple and distinct. *See, e.g., Drew v. United States,* 331 F.2d 85, 91 (D.C.Cir.1964); *State v. Campbell,* 615 P.2d 190, 199 (Mont.1980); *Commonwealth v. Peterson,* 453 Pa. 187, 307 A.2d 264, 271 (1973).

We conclude that Abel has failed to demonstrate that the district court abused its discretion by denying the motions for separate trials.

### III.

Appellant also argues that the trial court abused its discretion in allowing testimony of a remark made by one of the assailants in the second incident. Appellant cites no authority and fails to demonstrate an abuse of discretion by the trial court in permitting the victim of the second incident to testify as to a remark she thought was made by the appellant during the incident. The degree of certainty of the witness as to which of her assailants made the remark goes to the probative value and not to its relevance. The trial court is vested with discretion to determine whether the probative value of evidence outweighs any prejudicial effect, *see State v. Thomas,* 94 Idaho 430, 489 P.2d 1310 (1971), and we find no abuse of that discretion here.

We affirm.

BAKES and SHEPARD, JJ., and McFADDEN, J., pro tem., concur.

BISTLINE, Justice, dissenting.

The Court's view that the prosecutor did not improperly join the two offenses in question on the same information is *technically* sustainable under I.C.R. 8(a) as it read at the time applicable to this case. It has, however, since been redrafted, and well should have been. As it read in 1979, and as applied, it has all of the trademarks of prosecutorial prejudice written all over it. Today, and since its effective date of July 1, 1980, it is diametrically opposite to the earlier version under which Abel was prosecuted. The very fact that the same Court which spawned such an ill-starred rule eventually saw fit to replace it with a version not steeped in prejudice should alone serve to bring about the reversal which Abel seeks—and to which he is entitled.

The trial court at the time pertinent undoubtedly felt constrained to go along with a rule, supposedly of procedure, promulgated by the Court, but for certain should have granted Abel's motions, pursuant to I.C.R. 14, and should not have compelled Abel to defend against both charges in a single trial.

I.C.R. 14 is identical to and based upon Fed.R.Crim.P. 14. It is well established under the federal rule that there are three circumstances which will justify granting a defendant's Rule 14 motion to sever. As the majority recognizes, the court in *United States v. Foutz,* 540 F.2d 733, 736 (4th Cir. 1976), capsulized those circumstances in the following manner:

"When two or more offenses are joined for trial solely on this theory [similar offenses], three sources of prejudice are possible which may justify the granting of severance under Rule 14: (1) the jury may confuse and cumulate the evidence, and convict the defendant of one or both crimes when it would not convict him of either if it could keep the evidence properly segregated; (2) the defendant may be confounded in presenting defenses, as where he desires to assert his privilege against self incrimination with respect to one crime but not the other; or (3) the jury may conclude that the defendant is guilty of one crime and then find him guilty of the other because of his criminal disposition." (Footnotes omitted.)

*See also Drew v. United States,* 331 F.2d 85, 88 (D.C.Cir.1964).

Abel concedes that the second circumstance, the hindrance of the presentation of a full defense, is not present in this case, since his defense to each of the charges was alibi. He argues, however, that the remaining two circumstances were present and that they resulted in sufficient prejudice to compel a finding that the motion to sever should have been granted.

## A.

I am not sufficiently persuaded that the trial court erred in not forecasting the probability of there being a substantial danger that a jury would confuse and cumulate the evidence on these two charges. Taking a post mortem view, I note that the State presented only a few witnesses on the first charge, and only the victim testified as to the second charge. The evidence as a whole was simple and direct. The possibility that prejudice could occur as a result of jury confusion or improper cumulation was remote; that it did in fact occur is extremely doubtful. Thus, I agree with the majority that the record does not compel a finding that the trial court abused its discretion in refusing the motions to sever on this ground. *See United States v. Kellerman,* 432 F.2d 371 (10th Cir.1970).

## B.

In considering whether prejudice requiring severance was created by the possibility that "the jury may conclude that the defendant is guilty of one crime and then find him guilty of the other because of his criminal disposition," *Foutz, supra,* 540 F.2d at 736, the possible impact of the cumulative evidence should be evaluated by posing the following question: If the two incidents were considered in separate trials, would evidence of each of the incidents be admissible in the trial of the other? *See Foutz, supra; Drew v. United States,* 331 F.2d 35 (D.C.Cir.1964); 1 Wright, Federal Practice and Procedure: Criminal 2d § 222 (1982). This inquiry properly frames the analysis to be applied in determining whether prejudice sufficient to grant an I.C.R. 14 motion to sever exists. Although this Court has not previously examined I.C.R. 14, the law governing the admission of evidence of other crimes is well established in Idaho. The general rule is that "evidence of other unrelated criminal activity is inadmissible at trial to show criminal propensity on the part of the accused." *State v. Needs,* 99 Idaho 883, 892, 591 P.2d 130, 139 (1979). Those occasions when other crime evidence might be relevant and hence admissible were summarized in *State v. Wrenn,* 99 Idaho 506, 510, 584 P.2d 1231, 1235 (1978):

"Evidence of other crimes is admissible when relevant to prove:

(1) motive, (2) intent, (3) the absence of mistake or accident, (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other, (5) the identity of the person charged with the commission of the crime on trial, and (6) other similar issues."

Abel argues that a threshold question in determining the admissibility of other crime evidence is whether relevant issues have been or will be raised by the defense. Relevancy is, of course, the key word, and evidence of other crimes ought not be admitted unless relevant to the issues being tried. If not relevant to any issue, then evidence of other *charged* crimes clearly should not be placed before a jury empaneled to determine the factual issue of guilt as to a particular *charged* offense.[1] *See State v. Proud,* 74 Idaho 429, 262 P.2d 1016 (1953); *State v. Frentz,* 354 So.2d 1007 (La.1978).

Abel next argues that since he relied on the defense of alibi, only the identity exception to the rule against admissibility was placed at issue below. I agree, noting that although motive and intent, for instance, would ordinarily be relevant to the crimes charged in this case, Abel's defense raised no question as to the motive and intent of

---

1. Consider the important distinction between the two *charged* offenses and, as in *United States v. Powell, infra,* 587 F.2d 443 (9th Cir. 1978), evidence of a prior *proven* offense offered to prove a *charged* offense. Proven offenses are, of course, established judicial convictions.

the attacker(s) in the two incidents, nor was there any possibility of a contention that the attacks were a mistake or accidental. Abel raised no issue, apart from his not guilty plea, concerning these exceptions. There is nothing in the record, other than the bare fact of occurrence, which would have suggested that there was any issue as to a common scheme or plan such that proof of one incident would tend to establish the occurrence of the other.

Turning to a close examination of the identity evidence introduced at a single trial in the State's effort to establish the identity of Åbel as the attacker in both instances, the underlying question to be answered is whether the identity inference in a trial as to one charge would have been relevant in a trial on the other charge.

In determining whether Abel's actions in one alleged crime would help to identify him in the other, "the general or majority rule [is] that the evidence of similar sex offenses committed with or upon persons other than the prosecutrix is inadmissible." *State v. Mason,* 79 N.M. 663, 448 P.2d 175, 179 (N.M.App.1968). *See* Comment, Other Crimes Evidence in Louisiana, 33 La.L.Rev. 614, 619 n. 31 (1973); Annot., 77 A.L.R.2d 836, 859 (1961) and Later Case Service. This rule guards against two possible sources of error in the fact-finding process. The first is the possibility that the jury will assume that since the defendant was allegedly involved in one or more prior criminal offenses, it follows that he has a criminal disposition and is therefore probably guilty of the offense charged. The second is the possibility that the jury, although it is not convinced that the defendant committed the offense charged, will conclude that the defendant should be punished anyway because he is a person of criminal character.

In *State v. Hatton,* 95 Idaho 856, 864, 522 P.2d 64, 72 (1974), this Court held that: "Evidence of other crimes committed by the defendant is relevant to the issue of identity if it discloses a distinctive *modus operandi* common to the other crimes and the crime with which the defendant is charged." In *Hatton* the defendant was charged with murdering a store clerk after forcing him to lay face down on the floor with his hands by his sides and removing his wallet. This Court held that evidence of other crimes which the defendant had committed using similar methods was admissible, but that evidence of other robberies committed by the defendant in which store employees had *not* been forced to lay on the floor with their hands by their sides was *not* admissible to prove identity. This is consistent with the approach taken by courts in other jurisdictions. As the court in *State v. Sempsey,* 141 N.J.Super. 317, 358 A.2d 212, 215 (N.J.Super.Ct.1976), put it:

> "In order for evidence of a prior crime to be admissible on the issue of identity (for which it was offered here) the prior criminal activity with which defendant is identified must be so nearly identical in method as to earmark the crime as defendant's handiwork. *The conduct in question must be unusual and distinctive so as to be like a signature, McCormick on Evidence (2 ed. 1972), § 190 at 449,* and there must be proof of sufficient facts in both crimes to establish an unusual pattern." (Emphasis added.)

*See also Helton v. State,* 365 So.2d 1101 (Fla.App.1979) (evidence of previous sex offense not admissible on issue of identity because the only similarities between offenses were that both occurred in a wooded area and neither victim consented).

In this case the majority finds that "[t]he incidents were sufficiently similar to permit evidence of either to be introduced at a separate trial of the other." However, several of the facts upon which the Court relies to justify its conclusion have nothing to do with the incidents or the manner in which the incidents occurred. For example, the fact that a similar description of the assailant was given in each case in no way establishes a distinctive *modus operandi,* as was true in *Hatton, supra,* and *State v. Morris,* 97 Idaho 420, 546 P.2d 375 (1976). After declaring this case to be one which requires "a balancing," the Court appears to be determined to do what it must in order to tip the balance in favor of admissibility—perhaps at the expense of rationality.

Although there are a few similarities between the two incidents, "[i]n order for evidence to be admissible [to prove identity], the similarity required must rise above the level of characteristics common to many incidents of the crime; it must demonstrate a unique or distinct pattern easily attributable to one person." *State v. Beachum,* 96 N.M. 566, 632 P.2d 1204, 1206 (N.M.App. 1981). To my mind the "similarities" between the two incidents in this case just do not rise to that level. In fact, in this case "the differences between the crimes [charged] are more striking than the similarities, and such similarities as do exist 'all fit into an obvious tactical pattern which would suggest itself to almost anyone disposed to commit a depredation of this sort.'" *Foutz, supra,* 540 F.2d at 737 (quoting *Drew v. United States,* 331 F.2d 85, 93 (D.C.Cir.1964)). I find the reasoning of the Ninth Circuit Court of Appeals in *United States v. Powell,* 587 F.2d 443, 448 (9th Cir.1978), most persuasive:

"The probative value of evidence of other crimes where the issue is identity depends upon the extent to which it raises an inference that the perpetrator of the prior offenses was the perpetrator of the offense in issue. Both the existence and the strength of an inference proceeds through an evaluation of the similarities between the prior offense and the charged crime. *Thus, if the characteristics of both the prior offense and the charged offense are not in any way distinctive, but are similar to numerous other crimes committed by persons other than the defendant, no inference of identity can arise.* An inference of identity from prior crimes can only arise when the elements of the prior offenses and the charged offense, singly or together, are sufficiently distinctive to warrant an inference that the person who committed the prior offense also committed the offense on trial.... The probative value of evidence of other crimes on the issue

of identity always depends upon the strength of the inference; when the inference of identity is weak, evidence of prior crimes should be excluded because under such circumstances the prejudicial effect of the evidence inevitably outweighs the probative value of that evidence." (Citations omitted.) (Emphasis added.) *See* note 1, *supra.*

Nothing in the two incidents considered in this case was so unusual that it would "earmark" both crimes as the work of Abel. In fact the two incidents were more dissimilar than similar. Only a single attacker was involved in the first incident, but the second incident involved two men. The first attack occurred while the victim was getting into her car behind a bar, while the second occurred at a relatively well-lighted phone booth at the front of a store. In the first incident there was little evidence of sexual intent,[2] while in the second incident it was clear that the attackers intended to rape their victim. While the two incidents were relatively close together both timewise and area-wise, this in and of itself does not provide any evidence probative of the identity of the single assailant in the one incident and the two assailants involved in the other. Because of the obvious lack of distinctive similarities between the two incidents, the inference of identity is at best weak, at worst, nonexistent. Accordingly, it takes but little reflection to see that had the two charges been tried separately evidence of the one would not have been admissible in the trial of the other. Trying Abel on both charges in the same trial thus allowed the prosecutor to place before the jury evidence which would not otherwise have been admissible in two separate trials. The prejudice resulting from the tactic is enhanced by the fact that the evidence of "other crimes" was not merely a reference to identity evidence, but rather included *all* of the evidence used as proof against Abel as to the other crime.[3] *See State v. Foutz,*

---

2. In fact, the jury found Abel not guilty of the count of assault with intent to commit rape in the first incident.

3. It is interesting to ponder: would the majority as easily have found no error had the State

540 F.2d 733, 736 n. 3 (4th Cir.1976). In view of the emotional reaction triggered by sexual offenses, and particularly those which involve violence, it must as a practical matter be recognized that admission of *every detail* of the other offense, as opposed to the mere fact of occurrence, creates a substantially greater danger of prejudice than mere evidence that the accused has committed a criminal act in the past. Highly appropriate is the warning in the special concurrence of Judge Burnett in *State v. Boothe,* 103 Idaho 187, 193, 646 P.2d 429, 435 (Ct.App.1982), that following the abolition of the corroboration requirement in *State v. Byers,* 102 Idaho 159, 627 P.2d 788 (1981): [4]

"Idaho trial courts now should take a fresh look at the balance between probative value and prejudicial impact. We have noted ... that evidence of other crimes generally is not admissible to prove the offense charged. A person who committed other crimes might have been more likely to commit the crime in question; but the probative value of such evidence usually is outweighed by the unfair prejudice to the defendant. We have outlined the principal exceptions to this general rule. These exceptions are grounded in specific elements of proof of the crime charged. Evidence admissible under the exceptions must serve a genu-

ine purpose other than suggesting that the defendant probably committed the crime charged because he committed other crimes. . . .

"Sex offense cases ... are emotionally explosive. The potential for runaway prejudice is great. . . .

"In such circumstances, it will be especially crucial to identify the true purpose for which evidence of other sexual misconduct is offered. Purposes such as showing intent or proving a common scheme can no longer 'tag along' with corroboration. They should be examined on their own merits and weighed directly against the prejudicial impact. In the post-*Byers* era, there will be no easy answers."

**C.**

The State argues that even if evidence of each individual crime would have been inadmissible in separate trials, there was no prejudicial error because each crime was sufficiently simple and distinct to allow the jury to sort the evidence out without confusion. Thus, the State argues, and the majority readily agrees, that it is not necessary to consider whether the jury improperly cumulated the evidence in its deliberations of the evidence which is said to support convictions on both charges. In support of

joined three, four, five, on up to ten separate charges for trial in a single case? Its rationale advanced today, if valid, would have to lead to its approval. All that would be required would be a finding of a similarity of some kind. Whatever, it should be conceded that had the State joined *ten* charges of assault with intent to commit rape, the resulting prejudice would compel separate trials, regardless of any similarity real or imagined. Certainly, as the number of charges tried in one package increases, the potential for prejudice multiplies at a geometric rate. Presented with a defendant charged with just five individual offenses, one surmises that even the majority might concede that some jurors would tend to assume therefrom that the defendant was possessed of a criminal disposition and was therefore probably guilty of all offenses charged. Fortunately, it will not be necessary to determine the limits to which the majority would allow the State to go before recognizing that prejudice in the extreme necessarily results from the joinder of

charges for similar offenses, not necessarily as a matter of logic, but only because I.C.R. 8(a) no longer permits joinder of offenses on the ground that they are of "same or similar character." To change the rule is to recognize that the rule needed change for some reason. Here the reason is the invalidity of the rule. So viewed, there is error per se.

4. To the cautions which Judge Burnett directed to the trial courts should be added the caveat of the *Byers* opinion:

"We have no reluctance in *leaving to the district courts,* whose paramount obligation is always to see that justice is done, *the initial responsibility of insuring that a conviction is based on sufficient evidence,* and not on passion or prejudice." (Emphasis added.) 102 Idaho at 164–65, 627 P.2d at 793–94. Unfortunately for Abel that caveat, of course, postdated his trial and conviction based on improper and prejudicial joinder.

its position, the State cites *United States v. Miller,* 449 F.2d 974 (D.C.Cir.1971), and *Drew v. United States,* 331 F.2d 85 (D.C.Cir. 1964). However, in *Miller* the court found the evidence to be otherwise admissible. In *Drew,* while the court did opine that some cases might be tried together despite the fact that evidence from one would be inadmissible in the trial of the other, the court also cautioned that:

"If separate crimes are to be tried together—and we are not to be understood as intimating any conclusion that this can never, as a practical matter, be successfully undertaken—both court and counsel must recognize that they are assuming a difficult task the performance of which calls for a vigilant precision in speech and action far beyond that required in the ordinary trial. The confusion here was probably the result of the superficial similarity of the two crimes and the way in which they were committed. On this record, we cannot say that the jury probably was not confused or probably did not misuse the evidence . . . ." 331 F.2d at 94 (footnote omitted).

Under proper circumstances two separate charges arising out of two unrelated incidents might be tried together to the same jury, despite the fact that evidence of one offense would be inadmissible in the trial of the other. However, without doubt the court in *Foutz* correctly observed:

"One inevitable consequence of a joint trial is that the jury will be aware of evidence of one crime while considering the defendant's guilt or innocence of another. If the rationale of the 'other crimes' rule is correct, it would seem that some degree of prejudice is necessarily created by permitting the jury to hear evidence of both crimes." 540 F.2d at 736.

Here the weak inference of identity, if any, and the prejudicial impact of allowing the jury to hear as to each charge evidence as to the other charge, are such that I cannot but conclude, as a matter of law, that the jury was improperly influenced. As noted by the Ninth Circuit Court of Appeals in *Powell, supra,* 587 F.2d at 448: "[W]hen the inference of identity is weak, evidence of prior crimes should be excluded because under such circumstances the prejudicial effect of the evidence inevitably outweighs the probative value of that evidence."

The evidence in this case that Abel committed the second attack was extremely weak. It consisted entirely of an eyewitness identification by the victim, who admitted that she did not get a good look at her attacker and who initially failed to pick him out of a line-up.[5]

"The vagaries of eyewitness identification are well-known; the annals of criminal law are rife with instances of mistaken identification. Mr. Justice Frankfurter once said: 'What is the worth of identification testimony even when uncontradicted? The identification of strangers is proverbially untrustworthy. The hazards of such testimony are established by a formidable number of instances in the records of English and American trials. These instances are recent—not due to the brutalities of ancient criminal procedure.' The Case of Sacco and Vanzetti 30 (1927). A major factor contributing to the high incidence of miscarriage of justice from mistaken identification has been the degree of suggestion inherent in the manner in which the prosecution presents the suspect to witnesses for pretrial identification. A commentator has observed that '[t]he influence of improper suggestion upon identifying witnesses probably accounts for more miscarriages of justice than any other single factor—perhaps it is responsible for more such errors than all other factors combined.' Wall, Eye-Witness Identification in Criminal Cases 26. Suggestion can be

---

5. The victim did testify that the reason her first two choices in the line-up were incorrect was that she was afraid to name Abel as her attacker. This, however, does little to strengthen her testimony, and puts one in mind of the *Byers* victim who on seeing her attacker in a restaurant did not call the police, "apparently due to her stepmother's advice." 102 Idaho at 160, 627 P.2d at 789.

created intentionally or unintentionally in many subtle ways. And the dangers for the suspect are particularly grave when the witness' opportunity for observation was insubstantial, and thus his susceptibility to suggestion the greatest." *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 1933, 18 L.Ed.2d 1149 (1967) (footnotes omitted).

Although eyewitness identification may be sufficient to support a conviction for a sex offense—*see State v. Byers,* 102 Idaho 159, 627 P.2d 788 (1981)—the identification in this case is something less than compelling.

Under the circumstances, had Abel been tried separately for the second incident, it is highly probable that the jury would have acquitted him. In this respect this case is very similar to *United States v. Foutz, supra,* in which the Court stated:

"We think it highly probable that a jury ignorant of the second crime and Foutz' alleged participation therein would have acquitted him of the earlier robbery. There is thus a strong likelihood that the jury found Foutz guilty of the second robbery, and then concluded that since he had once robbed the bank, it was plausible that he had done so before. Since we cannot say that the government's case with respect to the March 13, 1975 robbery was indefensible, it is possible that the jury found him guilty of that crime under the rationale that with so much smoke there must be fire. Had the two offenses not been joined for trial, these 'spillovers' could not have occurred, and Foutz might well have been acquitted of the first crime; possibly of both." *Foutz, supra,* 540 F.2d at 739 (footnote omitted).

*See also Gregory v. United States,* 369 F.2d 185, 189 (D.C.Cir.1966), *cert. denied,* 396 U.S. 865, 90 S.Ct. 143, 24 L.Ed.2d 119 (1969) ("evidence as to one of the robberies was so weak as to lead one to question its sufficiency to go to the jury. Thus, its primary usefulness in this trial was to support the Government's case as to the robbery which resulted in the murder."). In the instant case the very strong identification of Abel in the first incident unquestionably posed

the danger that some "spillover" would occur and he would be convicted on the second incident, despite the fact that a different result might have been reached in a separate trial on the second incident. At the same time, if the jury was not fully convinced by the identity evidence connected with the first incident, the mere making of the charge against him as to the second incident may have been all that the jury required in order to tip the preponderating scales of justice to the requisite beyond a reasonable doubt. Thus, in my opinion the trial court erred in not ordering separate trials, and I would therefore reverse the judgments of conviction.

All told, the case is on a par with *State v. Cochran,* 97 Idaho 71, 539 P.2d 999 (1975), where Rule 8, I.C.R. was used to the prejudice of the defendants in that case. See dissenting opinion of McQuade, C.J., and Bakes, J. If this Court persists in its proliferation of rules, supposedly procedural, but many of which improperly transcend into substantive law, at the least it should condescend to apply those rules with an open mind and an eye looking toward a fair administration of criminal justice.